No. 71,028

STATE OF KANSAS, *Appellee*, v. TERRELL F. MYERS, *Appellant.*

(899 P.2d 1036)

Opinion filed July 14, 1995.

*Thomas Jacquinot,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Doyle Baker,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nola Foulston,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Defendant Terrell F. Myers, also known as Terrell F. Meyers, appeals his jury conviction of one count of possession of cocaine, K.S.A. 65-4127a. The Court of Appeals in an un-

published 2 to 1 decision filed January 20, 1995, reversed his conviction and remanded the case for a new trial because the trial court committed reversible error in responding to a jury inquiry. The Court of Appeals found that issue dispositive of the case and did not address several other alleged trial errors asserted by the defendant. This court granted the State's petition for review. We reverse the Court of Appeals and affirm the district court.

On January 7, 1993, Wichita police officers executed a search warrant at the home of defendant Terrell Myers. Officers discovered the defendant and two or three others, including Belinda Hutton, in a bedroom. The defendant was seated in a chair, and the others were sitting on a couch facing him. A small pile of crack cocaine was in plain sight on top of a television set located behind and to the right of the defendant. The cocaine was readily available to everyone in the room. Officers also recovered a crack pipe which they saw Hutton throw or place under the couch, two crack pipes in a cigarette purse underneath the couch and two pipes in a jacket in a closet behind the couch. Cocaine residue was found in the crack pipe Hutton put under the couch.

In another bedroom, officers recovered a container that tested positive for cocaine residue. A test tube which officers believed had been used to make crack cocaine was found in the kitchen.

During questioning following his arrest, the defendant claimed he did not know the cocaine was in his house that evening and if he had known it was there, he would have smoked it. He smoked crack cocaine every day and admitted he had smoked cocaine in a pipe in his home within the previous 24 hours. He also acknowledged it was his practice to allow others to smoke cocaine in his house as long as they shared with him.

The defendant was charged with one count of possession of cocaine. At trial, Hutton testified that she and her friend, Sylvia, brought cocaine to Myers' house and Sylvia put it on the television. Although the defendant was sitting in a chair when Sylvia put the cocaine on the television and broke it up, Hutton did not think the defendant was aware of what Sylvia was doing. After breaking up the cocaine, Sylvia placed some of it in a pipe, and everyone in the room, including the defendant, took turns smoking the pipe. When

officers arrived, Hutton threw or placed the pipe under the couch. She estimated the defendant had last smoked cocaine 20 to 30 minutes before the police arrived.

An officer testified the defendant's residence was commonly referred to as a "smoke house," which is "a place where, not necessarily cocaine is purchased but people go there to smoke crack cocaine, almost like a safe house."

At the instructions conference, defense counsel requested an instruction, based on *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983), that the defendant could not be guilty of possessing cocaine merely because the drug was present in his bloodstream. The court declined to give the instruction, finding that there was no evidence the defendant had cocaine in his system and that if the jury believed Hutton, they would find him guilty of possession by having possessed the pipe.

During deliberations, the jury asked the trial court the following questions:

"Is it possible to possess a drug that has already been smoked[?] For instance, can we count that Terrell used it earlier as possession or since it was all smoked is it no longer possession[?] Are we trying to determine whether he possessed the little amount left or can we also assume he possessed the drugs he admitted to smoking[?]"

Defense counsel renewed her request for the proposed instruction that evidence of narcotics within one's body is not sufficient evidence to establish guilt beyond a reasonable doubt. The trial court declined to give the proposed instruction and instructed the jury as follows:

"[I]t is possible to have possessed cocaine which has been smoked. It is also possible to possess the cocaine left in the pipe—left in a pipe after smoking cocaine. Under either theory, the State must prove the claims set out in Instruction Number 3."

Instruction No. 3 stated:

"The Defendant, Terrell F. Meyers, is charged with the crime of violation of the Uniform Controlled Substances Act of the State of Kansas as it pertains to a narcotic drug known as cocaine. Mr. Meyers pleads not guilty.

"To establish this charge each of the following claims must be proved:

1. That Mr. Meyers possessed a narcotic drug known as cocaine;

2. That he did so intentionally; and
3. That he did so on or about the 7th day of January, 1993, in Sedgwick County, Kansas.

" 'Possession' is having control over a place or thing with knowledge of and the intent to have such control. Such possession and intent may be proved by circumstantial evidence.

"Possession may be immediate and exclusive, jointly held with another, or constructive.

"Constructive possession is knowingly having both the power and the intention at a given time to exercise dominion or control over the property in questions [*sic*].

"Joint possession occurs when two or more persons who have the power or control and the intent to manage exercise the same jointly."

### Instruction No. 3A provided:

"It is a defense in this case if by reason of ignorance Mr. Meyers did not have at that time the mental state required as an element of the crime.

"Mr. Meyers claims lack of knowledge of the presence of cocaine under his control and lack of intent to possess those substances as a defense. Evidence in support of this claim should be considered by you in determining whether the State has met its burden of proving that Mr. Meyers is guilty. The State's burden of proof does not shift to Mr. Meyers. If the defense asserted causes you to have a reasonable doubt as to Mr. Meyers' guilt, you should find him not guilty."

The jury found the defendant guilty of one count of possession of cocaine. He was sentenced to 4 to 10 years' imprisonment and later placed on probation. He appealed his conviction to the Court of Appeals.

The Court of Appeals found the trial court abused its discretion in responding to the jury's questions and remanded the case for a new trial. In doing so, the Court of Appeals recognized that the trial court's response to the jury's inquiry that "it is possible to have possessed cocaine that has been smoked" was legally correct. However, a majority of the Court of Appeals panel was of the opinion the answer was misleading in that the jury might have convicted the defendant based upon his statement that he used drugs and not on the basis of the drugs recovered in the search. In doing so, the court concluded:

"Instruction No. 3 failed to correct that portion of the trial court's answer that the jury could convict defendant for the cocaine that he had smoked previously. And the trial court's answer failed to explain to the jury that defendant's admitted

consumption of cocaine by itself would not support a criminal conviction for possession of cocaine. See *Hill*, 16 Kan. App. 2d at 285."

The sole issue raised by the State's petition for review is whether the trial court committed reversible error in its response to the jury's inquiry.

K.S.A. 22-3420(3), which addresses the trial court's duty in responding to an inquiry from the jury, provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given . . . in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

While the trial court has a mandatory duty to respond to a jury's request for further information as to the law of the case, the manner and extent of the trial court's response rest in the sound discretion of the trial court. *State v. Boyd*, 257 Kan. 82, 87, 891 P.2d 358 (1995). "The test of the trial court's abuse of discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Taylor v. State*, 251 Kan. 272, Syl. ¶ 3, 834 P.2d 1325 (1992). Obviously, a court does not have discretion to erroneously answer a jury's inquiry. The defendant does not contend that the trial court's response was an incorrect statement of the law but asserts that based upon the facts in this case it was misleading and allowed the jury to reach an erroneous conclusion.

The defendant's contention that the trial court committed reversible error in its response to the jury is based primarily on *State v. Flinchpaugh*, 232 Kan. 831, and the trial court's refusal to instruct the jury based upon the decision in that case. In *Flinchpaugh*, the defendant was involved in an automobile collision and charged with possession of cocaine based solely on the results of blood tests taken following the collision. The State presented no evidence of how or when the chemicals were introduced into the defendant's system, and the trial court dismissed the charges. This court affirmed, finding that because a person no longer has the

requisite power to control a drug once it is within his or her system, evidence of a controlled substance *after* it is assimilated in a person's blood does not establish possession or control of that substance. 232 Kan. at 834. At the same time, the court recognized:

"Discovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, but it is not sufficient evidence to establish guilt beyond a reasonable doubt. The absence of proof to evince knowledgeable possession is the key. The drug might have been injected involuntarily, or introduced by artifice, into the defendant's system. The prosecution did not establish that defendant ever knowingly had control of the cocaine. . . . In the narrow holding of this case, we find that evidence of a controlled substance assimilated in one's blood does not establish possession of that substance as defined by K.S.A. 65-4127a, nor is it adequate circumstantial evidence to show prior possession by that person. Other corroborating evidence combined with positive results of a blood test could be sufficient evidence to prove guilt beyond a reasonable doubt depending on the probative value of the corroborating evidence." 232 Kan. at 835-36.

The narrow holding of *Flinchpaugh* applies to cases in which the *only* evidence is evidence of a controlled substance *after* it is assimilated in the blood. In such cases, the necessary elements of knowing and intentional control over the substance are lacking.

The defendant's reliance on *Flinchpaugh* is misplaced. Here, Hutton testified the defendant had smoked cocaine in a community pipe 20 to 30 minutes prior to arrival of the police. That pipe was recovered in the search and contained cocaine residue. In addition, the defendant admitted smoking cocaine in a pipe in his home within the previous 24 hours. There was no evidence of any controlled substance assimilated in his blood. Unlike in *Flinchpaugh*, the evidence in this case dealt specifically with the manner and circumstances in which the defendant consumed cocaine immediately prior to the arrival of the police. Because the evidence in this case deals with cocaine *before* it was assimilated in the defendant's system and the manner in which it was consumed, the holding in *Flinchpaugh* is not applicable to this case.

To convict a person of possession of an illegal substance based upon physical evidence recovered during the execution of a search warrant requires that the substance be recovered in the search or that it was in the defendant's possession immediately prior to the

search. Here, when executing the search warrant, the officers recovered a crack pipe with cocaine residue in it. There was testimony that within 30 minutes prior to the search the defendant had smoked cocaine using that pipe. He had the possession, knowledge, and intent necessary to support his conviction of possession of cocaine in the pipe and the residue remaining therein. In addition, a small pile of cocaine was readily visible on the television set within reach of the defendant.

The Hon. James J. Smith, district judge, sitting with the Court of Appeals panel, dissented from the majority holding in this case. In doing so, Judge Smith stated:

"I dissent from the result reached herein. I find *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983), does not apply to the instant case because cocaine was not found in the blood of defendant and no evidence of such was presented to the jury. . . .

"*Flinchpaugh* is only applicable to cases in which the blood of the defendant has been tested and the presence of a controlled substance has been found therein. In such cases, *Flinchpaugh* is limited to those situations in which the only evidence of possession is the presence in the blood of the controlled substance. No such evidence of blood testing existed in this case, but other evidence of possession did exist. The holding in the *Flinchpaugh* case does not apply and does not create any requirement for an instruction on the presence of cocaine in the blood.

"*Flinchpaugh* does hold circumstantial evidence can be used to show prior possession by a person.

. . . .

"Here, evidence was presented by the testimony of defendant and by defendant's niece, Belinda Hutton, of possession by defendant prior to the time the Wichita Police Department arrived at the residence. Certain pipes that could be used in the smoking of cocaine were found at the residence. This is all evidence of prior possession of the cocaine by defendant. The presence of cocaine in the blood would have been additional evidence but is not necessary to prove possession.

"The jury, as the finder of fact, found possession from the evidence. The evidence is sufficient for a jury to have found, beyond a reasonable doubt and in accordance with instruction No. 3 as quoted by the majority, possession of cocaine that had been smoked prior to the arrival of the officers. The use by Myers earlier did 'count as possession' as the jury asked, and the trial court correctly answered the question by stating that 'it is possible to have possessed cocaine that has been smoked.' I would affirm."

The defendant also relies on *State v. Thronsen*, 809 P.2d 941 (Alaska App. 1991), where the defendant was charged with possession of cocaine "in his body." The court concluded that a defendant could not be convicted of possession of cocaine in his or her body because the person has no control over the cocaine at that point and therefore does not have possession. Here, the defendant was not charged with possession of cocaine based upon cocaine within his body. *Thronsen* is not applicable here.

While we recognize that the trial court's response to the jury could have been clearer and more precise, we agree with Judge Smith and conclude that the court did not commit reversible error in its response and that the Court of Appeals erred in so holding.

The defendant in his original appeal raised several other issues not considered by the Court of Appeals. None of the additional issues has merit, and we will consider them only briefly.

The defendant argues the trial court erred in refusing to give his requested instruction, based on *Flinchpaugh,* that evidence of illegal substances in one's bloodstream does not constitute possession. As a result of the trial court's failure to give his requested instruction, he asserts he was denied his Fourteenth Amendment right to present his theory of defense. The defendant believes he was entitled to the instruction because the evidence indicated he was unaware of the presence of cocaine and did not exercise control of it on the night of his arrest. He argues Hutton's testimony that he had smoked cocaine 30 minutes prior to the arrival of the officers could prejudice the jury into thinking the mere presence of cocaine in his system constituted possession. He believes the jury could have concluded the cocaine found its way into his system by means other than the pipe allegedly possessed by Hutton. As stated earlier, the defendant's reliance on *Flinchpaugh* is misplaced. *Flinchpaugh* is not applicable to the facts of this case.

Next, the defendant argues the evidence is insufficient to support his conviction for possession of cocaine. He asserts there is no substantial evidence that he had knowledge or control over the cocaine and the jury based its verdict on the erroneous response given by the trial court.

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether all of the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of a charge are sustained. [Citation omitted.]" *State v. Brown*, 245 Kan. 604, 614, 783 P.2d 1278 (1989).

The evidence in the record supports the finding that the defendant knowingly and intentionally possessed the cocaine and pipe all parties were using shortly before the police arrived, the pile of cocaine on the television, or the residue in the crack pipe. When police arrived, the defendant was sitting in a chair within reach of a pile of crack cocaine which was in plain view on the television in a bedroom of his residence. While the defendant was sitting in the chair, a woman had broken the cocaine into rocks and used a portion of it to fill a crack pipe. Everyone in the room, including the defendant, took turns smoking the pipe. The defendant last smoked this pipe 20 to 30 minutes before the police arrived. The defendant acknowledged he smoked cocaine every day and that it was his practice to allow others to smoke cocaine in his house as long as they shared with him. The jury could conclude beyond a reasonable doubt that the defendant knowingly and intentionally possessed cocaine at the time and place alleged in the complaint.

Finally, the defendant contends the trial court abused its discretion by allowing testimony about a test tube, recovered during the search, without establishing a proper chain of custody. The test tube was found in the kitchen of defendant's home and was never offered in evidence during the trial. The only two references we find to the test tube in the entire transcript were made by Officer Agnew of the Wichita Police Department, one of the officers involved in executing the search warrant. After testifying about items recovered during the search, the following occurred:

"Q.  [By the State] What other items did you find?
"A.  There's a test tube that was found in the kitchen."

Following several pages of testimony about the use of various items recovered during the search and specific exhibits that were being offered in evidence, the following occurred:

"Q. Are you familiar with any of the utensils used to make crack?

"A. Yes.

"Q. Did you take into evidence anything that could have been used to make crack?

"Ms. Ward [Defense attorney]: Objection. Lack of foundation and again relevance.

"The Court: Overruled.

"Q. Go ahead.

"A. Yes, I did. The test tube here is used for cooking up crack."

While there may very well have been a lack of evidence to establish a clear chain of custody to the test tube, it was never offered into evidence, and the two rather innocuous answers referring to the test tube certainly do not constitute reversible error.

We have considered all the issues and arguments raised by the defendant and find no reversible error. The decision of the Court of Appeals is reversed, and the judgment of the district court is affirmed.