NOT DESIGNATED FOR PUBLICATION

No. 118,863

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAKOTA NICHOLAS JACOBS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed April 5, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

PER CURIAM: Dakota Nicholas Jacobs appeals his conviction for contributing to a child's misconduct. On appeal, Jacobs contends there was insufficient evidence to support the jury's finding that he encouraged a child to possess methamphetamine. Upon our review, we hold there was sufficient evidence to support the conviction. Accordingly, we affirm the jury's verdict.

1

FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2015, A.M.—a 15-year-old female—ran away from home. A.M. first met up with her ex-boyfriend, Max Wilson, and stayed at his house for a few days. While at Wilson's house, A.M. met Jacobs, who was 22 years old. A.M. decided to leave with Jacobs and the couple went on a two-week drug spree in several cities and residences.

After they left Wilson's house, Jacobs and A.M. went to a residence in Olathe. A.M. referred to this residence as a "trap house," which is a phrase that A.M. used to describe "[a] place where people get high." A.M. used methamphetamine and marijuana while at this residence. After a couple days, Jacobs and A.M. took several items, including cell phones and clothes, from the residence and left. Jacobs and A.M. went to another house and tried to sell the items. A.M. smoked marijuana at this location.

Jacobs and A.M. then went to De Soto to obtain more methamphetamine. While in De Soto, the couple spent the night in a hotel. Jacobs and A.M. also stayed at a trailer in Bonner Springs. Jacobs knew the owner of the trailer, Jennifer Simek. Simek allowed the couple to stay in a bedroom for about a week and a half. About January 15, 2016, some 17 days after she ran away, A.M. decided to return home.

After A.M. returned home, she was taken to Children's Mercy Hospital for a sexual assault examination. Upon arrival at the hospital, A.M. was still under the influence of methamphetamine. Later, A.M. also was transported to the Sunflower House where Erin Miller Weiss interviewed her. This interview was recorded and later played for the jury.

During the interview with Weiss, A.M. said the time she was away from home and with Jacobs was "the most devastating weeks of [her] life." During this time, A.M. used

2

methamphetamine that Jacobs gave to her. A.M. explained that, because of the methamphetamine, "I wasn't even in a mental state of mind to think for myself." A.M. believed the drugs "screwed [her] brain up," causing her thoughts and conversations to become disorganized. She could not "think like a normal person anymore."

A.M. recounted to Weiss the events that occurred while she was with Jacobs, but she had difficulty remembering what happened when the couple were in Simek's trailer. A.M. disclosed that Jacobs had sexual intercourse with her on multiple occasions. She specifically recalled they had sexual relations at the Olathe trap house, the De Soto motel, and Simek's trailer.

While at the De Soto motel, A.M. allowed Jacobs to ejaculate inside her vagina because she felt worthless and considered herself "a tweaker now." But upon her return home, A.M. realized that she was not a "tweaker" and had no urge to use methamphetamine. A.M. explained that she never had the urge to use methamphetamine, but "it was just something that I was curious about and wanted to try." A.M. stated that she did not want to become a drug addict or resort to drugs, "especially that kind of drug. That [expletive] will [expletive] you up and everything that you do—nothing—it will be for nothing. . . . Its—its scary."

When asked if she used methamphetamine before December 30, 2015, A.M. admitted that she once unknowingly ingested methamphetamine at school. While at school, her friend gave A.M. something and told her to eat it. Believing that it was candy or some form of marijuana, A.M. inadvertently ingested methamphetamine.

A detective interviewed Jacobs about his involvement with A.M. Jacobs said that he picked up A.M. because he thought she was homeless. Jacobs denied having sexual intercourse with A.M., but he admitted that he and A.M. were at the Olathe trap house.

3

Jacobs acknowledged the nature of the trap house, explaining that "you had to have dope to stay there."

The State charged Jacobs with two counts of aggravated indecent liberties with a child and one count of contributing to a child's misconduct. In the contributing to a child's misconduct charge, the State alleged that Jacobs encouraged A.M. to commit felony possession of methamphetamine.

During trial, A.M. testified that she used methamphetamine several times while on the run with Jacobs. When discussing the methamphetamine use at the Olathe trap house, the following colloquy occurred:

> "[THE PROSECUTOR:] Did you use methamphetamine at the trap house in Olathe?
> "[A.M.:] Yes.
> "[THE PROSECUTOR:] And do you remember how you got that methamphetamine?
> "[A.M.:] We were downstairs and he came back downstairs with the meth.
> "[THE PROSECUTOR:] Okay. And when you say 'he,' who are you referring to?
> "[A.M.:] Dakota [Jacobs].
> "[THE PROSECUTOR:] Did he end up giving you the methamphetamine?
> "[A.M.:] Yes. I don't want to say it like that, because we both did it together.
> "[THE PROSECUTOR:] Okay. So you used methamphetamine together?
> "[A.M.:] Yes.
> "[THE PROSECUTOR:] He just had it?
> "[A.M.:] Yes.
> "[THE PROSECUTOR:] And when you are saying using methamphetamine together, were you smoking the methamphetamine?
> "[A.M.:] Yes.
> "[THE PROSECUTOR:] And were you sharing the pipe together?
> "[A.M.:] We were."

4

At trial, Simek testified about her observations when A.M. and Jacobs stayed at her trailer. Simek explained that A.M. seemed scared, "close-minded," and did not talk much because Jacobs was around her. Jacobs did not allow A.M. to be away from him. According to Simek, A.M. cried while at the trailer because she wanted to leave but did not know what to do. Simek offered to help A.M., but she refused. Simek testified that she believed Jacobs was exerting control over A.M. and that he had sexual intercourse with her.

After considering the evidence, the jury convicted Jacobs of contributing to a child's misconduct, finding that he encouraged A.M. to possess methamphetamine. The jury was unable to arrive at a verdict on the two charges of aggravated indecent liberties with a child. The district court sentenced Jacobs to 21 months in prison. Jacobs appeals his conviction.

SUFFICIENCY OF EVIDENCE

On appeal, Jacobs contends his conviction for contributing to a child's misconduct should be reversed because the State presented insufficient evidence to support the jury's finding that he encouraged A.M. to possess methamphetamine. Jacobs argues: "In a light most favorable to the [S]tate, the record establishes that *Mr. Jacobs* possessed methamphetamine and that he and A.M. jointly used methamphetamine. There is no evidence that Mr. Jacobs 'encouraged' A.M. to commit the separate and distinct offense of her possession of methamphetamine . . . ."

Our standard of review provides that when the sufficiency of evidence is challenged in a criminal case, our court reviews all evidence in the light most favorable to the State. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). The conviction will be upheld if the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. 307 Kan. at 668. In

5

determining whether there is sufficient evidence to support a conviction, an appellate court generally will not reweigh the evidence or reassess witness credibility. 307 Kan. at 668. Finally, a verdict may be supported by circumstantial evidence if that evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. To be sufficient, circumstantial evidence need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

The State charged Jacobs with contributing to a child's misconduct under K.S.A. 2015 Supp. 21-5603(a)(5). The statute defines the crime as "knowingly causing or encouraging a child under 18 years of age to commit an act which, if committed by an adult, would be a felony." The jury instructions provided that the State must show: "The defendant knowingly encouraged [A.M.] to commit an act, to-wit: possession of methamphetamine, which if committed by an adult would be a felony." As a result, to uphold Jacobs' conviction, there must be sufficient evidence from which a rational jury could find that Jacobs encouraged A.M. to possess methamphetamine.

Jacobs' argument focuses on the meaning of the terms "encouraging" and "possession." Jacobs asserts the crime of encouraging a child to commit a felonious act under K.S.A. 2015 Supp. 21-5603(a)(5) is similar to criminal solicitation, which prohibits "encouraging . . . another person to commit a felony . . . for the purpose of promoting or facilitating the felony." K.S.A. 2015 Supp. 21-5303(a). Our court recently interpreted the word "encouraging" as used in the criminal solicitation statute in *State v. Johnson*, No. 110,837, 2017 WL 4558235, at *5-6 (Kan. App. 2017) (unpublished opinion), *rev. denied* 308 Kan. 1598 (2018). The analysis in *Johnson* provides some guidance regarding the meaning of encouraging a minor to commit a felony in violation of K.S.A. 2015 Supp. 21-5603(a)(5).

The term "encouraging" is easily understood and means: "'To instigate; to incite to action; to embolden; to help.'" 2017 WL 4558235, at *5 (quoting Black's Law

6

Dictionary 644 [10th ed. 2014]). Encouragement, as used to define criminal solicitation and contributing to a child's misconduct, is not dependent on the subjective feelings or understanding of the person solicited. Rather, only the defendant's conduct is considered when determining whether the crime has been committed. 2017 WL 4558235, at *5.

With regard to possession, the Kansas Criminal Code defines possession as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2015 Supp. 21-5111(v). A person has control over an item when that person restrains or directs influence over the item. *State v. Flinchpaugh*, 232 Kan. 831, 833-34, 659 P.2d 208 (1983). "The intent to possess, to appropriate the drug to oneself, constitutes the requisite mental attitude for conviction of possession." 232 Kan. at 835.

Returning to the case on appeal, upon our independent review of the evidence admitted at trial there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Jacobs encouraged A.M. to possess methamphetamine. In the recorded interview, A.M. said that Jacobs gave her methamphetamine. During trial, A.M. testified that she and Jacobs used methamphetamine together at the Olathe trap house. A.M. explained that Jacobs obtained the controlled substance, brought it downstairs to her, and they smoked it together from a pipe. Jacobs' actions of having methamphetamine and giving it to A.M. to smoke were sufficient to show that he encouraged A.M. to possess methamphetamine.

Jacobs cites *Flinchpaugh* to argue that A.M.'s *use* of methamphetamine was insufficient to show that she *possessed* it. In *Flinchpaugh*, the State charged the defendant with possession of cocaine based solely on the results of blood tests taken after an automobile collision. The State presented no evidence of how or when the chemicals were introduced into the defendant's system, and the district court dismissed the charges.

7

In a narrow holding, our Supreme Court affirmed the dismissal, finding that "evidence of a controlled substance assimilated in one's blood does not establish possession of that substance." 232 Kan. at 835. The court explained there was insufficient evidence to prove knowledgeable possession because the cocaine "might have been injected involuntarily, or introduced by artifice, into the defendant's system." 232 Kan. at 835.

Jacobs' reliance on *Flinchpaugh* is misplaced given the particular facts of the case on appeal. As our Supreme Court later clarified: "The narrow holding of *Flinchpaugh* applies to cases in which the *only* evidence is evidence of a controlled substance *after* it is assimilated in the blood. In such cases, the necessary elements of knowing and intentional control over the substance are lacking." *State v. Myers*, 258 Kan. 51, 56, 899 P.2d 1036 (1995).

The State did not introduce evidence of methamphetamine assimilated in A.M.'s blood. Instead, A.M. admitted that she smoked methamphetamine after Jacobs brought the drug to her. Unlike the blood-test results in *Flinchpaugh*, the evidence here dealt specifically with the manner and circumstances in which A.M. possessed and consumed the methamphetamine. The evidence showed that, when smoking the methamphetamine, A.M. had at least joint control over the methamphetamine and knowingly appropriated the drug to herself. We conclude that under these circumstances there was sufficient evidence that A.M. possessed methamphetamine.

Finally, Jacobs claims the record contains no evidence that he encouraged A.M. to possess or use methamphetamine because she wanted to use drugs. Jacobs suggests "[t]he state's evidence did not show that A.M. had to be *encouraged* to use methamphetamine." But, as previously discussed, the defendant's conduct—rather than the subjective feelings of the minor—determines whether the defendant encouraged a child to commit a felonious act. By picking up a runaway child and providing her with methamphetamine, Jacobs encouraged A.M. to possess the drug.

8

Even if this court considered A.M.'s willingness to use methamphetamine, the result would not change. The evidence shows that A.M. unintentionally used methamphetamine before running away, but after she ran away Jacobs repeatedly provided her with methamphetamine to use. The jury heard evidence that during this time period A.M. could not think for herself and that Jacobs engaged in dominating and controlling behavior over her. Although curious about methamphetamine, A.M. expressed that she was scared of becoming addicted to the drug. This evidence shows that, despite A.M.'s curiosity and agreement to use methamphetamine, Jacobs encouraged her to possess it.

In conclusion, the evidence, when viewed in a light most favorable to the State, was sufficient for a rational fact-finder to find that Jacobs encouraged A.M. to possess methamphetamine. As a result, there was sufficient evidence to support Jacobs' conviction of contributing to a child's misconduct.

Affirmed.