The State v. Metz.

No. 22,611.

THE STATE OF KANSAS, *Appellee*, v. ED METZ, *Appellant*.

SYLLABUS BY THE COURT.

LIQUOR LAW — *Having Intoxicating Liquor in Possession — Insufficient Evidence to Sustain Charge.* The evidence on which the defendant was convicted of unlawfully having intoxicating liquor in his possession, considered, and held insufficient to establish the fact of possession.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed November 6, 1920. Reversed.

*S. B. Amidon, D. M. Dale, S. A. Buckland, H. W. Hart*, and *Glenn Porter*, all of Wichita, for the appellant.

*Richard J. Hopkins*, attorney-general, and *Lon C. McCarty*, county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of unlawfully having intoxicating liquor in his possession. He appeals, and contends the evidence was insufficient to establish the fact of possession.

At about 10:30 on a Sunday night the sheriff of Lyon county overtook and halted a twelve-cylinder, seven-passenger Packard automobile, as it was coming into the city of Emporia from the east. The automobile was curtained on both sides up to the front seat. In the front seat were three persons, I. E. Newell, who was driving the automobile, the defendant, who was on the opposite side of the seat, and a woman, who sat between the two men. The space back of the front seat contained 350 quart bottles of intoxicating liquor. The liquor filled the space to such an extent that, when a rear door of the automobile was opened, six or seven bottles fell to the pavement and broke. The defendant and Newell wore business suits of good quality. The defendant wore unionalls over his other clothing. There was a loaded revolver in the automobile. Finding themselves in custody of officers of the law, Newell claimed the automobile and possession of the liquor, and the defendant disclaimed relation to both, except that he was riding in the automobile as Newell's guest.

38—107 Kan.

The occupants of the automobile were arrested, and locked up for the night. Newell was afterwards convicted, whether of unlawful possession of liquor or unlawful transportation of liquor, or both, the record does not disclose. The complaint against the defendant contained two counts, one for unlawful possession of liquor and one for unlawful transportation of liquor, in violation of sections 1 and 2 of the "bone-dry" law, which read as follows:

"SECTION 1. It shall be unlawful for any person to keep or have in his possession, for personal use or otherwise, any intoxicating liquors, or permit another to have or keep or use intoxicating liquors on any premises owned or controlled by him, or to give away or furnish intoxicating liquors to another, except drüggists or registered pharmacists as hereinafter provided. . . .

"SEC. 2. It shall be unlawful for any common carrier, firm or corporation or any other person for hire or without hire to bring or carry into this state, or carry from one place to another within this state, intoxicating liquors for another or for itself or himself, even when intended for personal use; and it shall be unlawful for any common carrier, its agent or employee to deliver any intoxicating liquors that may be in its possession to any person for any purpose whatsoever. . . ." (Laws 1917, ch. 215.)

Other sections of the act permit transportation and possession of wine for communion purposes, and of alcohol for certain restricted purposes. The jury was instructed that any one who counsels, assists, aids, or abets in the commission of an offense may be convicted as if he were sole offender. The defendant made a timely motion for his discharge, and was acquitted of unlawfully carrying the liquor.

There was much testimony besides that which established the facts attending the arrest already stated, and which may be called admitted facts. When arrested, the defendant and Newell freely gave a full account of themselves to the sheriff. Newell owned the automobile, and was taking the liquor, which he had procured in Kansas City, Mo., to Wichita, Kan. The defendant and Newell had known each other in Wichita, where the defendant was a stage hand in a theater. The defendant had gone to Kansas City on Tuesday to spend a vacation. On Saturday he met Newell in Kansas City. In a conversation which followed, the defendant said he was going home the next day. Newell was going to Wichita the next day, and offered to

take the defendant in his automobile. The defendant accepted, in order to save railroad fare, and had no connection whatever with the transportation or custody of the liquor. When the defendant arrived at the garage in Kansas City from which the party started to Kansas, the side curtains were on the automobile, and Newell and the woman were already in the front seat. Newell drove the car all the way from Kansas City. Some distance out of Kansas City the defendant got out of the automobile. When he resumed his place in the automobile, Newell gave him the unionalls to put on to keep his clothes clean. At that time Newell told the defendant there was liquor in the automobile. Newell and the defendant testified to the same facts at the trial. When arrested, Newell claimed the woman was his wife, which was not true. The revolver belonged to Newell. Newell admitted he had been arrested before for violation of the liquor law. There was some discrepancy between some statements of the defendant with reference to details of his arrangement with Newell about leaving Kansas City. Except in relation to this discrepancy, the state offered no testimony contradicting the testimony of the two men.

From the foregoing it is apparent the verdict rests on what have been called the admitted facts. Leaving the admitted facts on one side, all the material testimony indicated the defendant is innocent. If any part of such testimony be disregarded, the remainder indicates his innocence. If all or any part of such testimony be disregarded, no additional fact, favorable to the state, is proved which may supplement the admitted facts.

The statute was the culmination of legislation directed against the liquor traffic. Its provisions are so extreme that there is little room for interpretation. The pertinent portion of the first section denounces keeping in possession or having in possession, for personal use or under other circumstances, any intoxicating liquor. The gist of the offense is possession. What is possession?

The term "possession" is derived from the Roman law, and ever since the days of the Roman law its proper denotations and connotations have been the subject of discussion by jurists and philosophers. The modern critiques of Holmes, "The Com-

mon Law," lecture VI; Pollock and Wright, "Possession in the Common Law"; Thayer, "Possession," 18 Harvard Law Review, page 196; and Salmond, "Jurisprudence," chapters XIII and XIV, are stimulating and helpful. It is not necessary for present purposes to dwell on either the importance or the intricacies of the subject. It is sufficient to say that we are concerned with corporeal possession in fact. Following Salmond's definition and analysis, which are open to as little objection as any, corporeal possession is the continuing exercise of a claim to the exclusive use of a material thing. The elements of this possession are, first, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. All the authorities agree that an intent to exclude others must coexist with the external facts, and must be fulfilled in the external physical facts, in order to constitute possession. It is this requirement which prevents the man in whose building, or automobile, or traveling bag, or pocket, liquor is found, which was surreptitiously placed there by another, from being a violator of the law.

If we leave out of account Newell's claim and the defendant's disclaimer when they were arrested, and apply the conception of possession indicated to the remainder of the admitted facts, Newell had possession. For all practical purposes the bottles of liquor constituted a single mass, and bore to the automobile the relation of eggs to the basket in which they are carried. Newell was in full control of the automobile, and was demonstrating dominion over it and the liquor. In the absence of some additional fact or facts, the defendant could not have disputed possession with Newell on even terms, and a civil suit between them for possession would have been decided in favor of Newell.

It is an admitted fact that the liquor was being transported. The jury acquitted the defendant of transporting the liquor. Newell was transporting it, and that fact tended to weaken attribution of possession to the defendant. The defendant wore unionalls. That fact might indicate he was to do some-

The State v. Metz.

thing about the automobile, if occasion required, which might soil his clothing, and so be relevant to the charge of transporting liquor, or aiding Newell in transporting liquor. The fact was not a characteristic or an incident of possession, and did not militate against the obvious possession of Newell. The fact that the automobile was curtained to conceal the liquor from casual observation, and the fact that the automobile was so filled with liquor the three persons were obliged to sit in the front seat, gave no clue to possession of the liquor. The revolver was simply lying in the automobile. It was not closely identified with the automobile, as the liquor was, and if the charge had been unlawful possession of a deadly weapon, proof of possession would have been in a state of suspense, and the prosecution would have been obliged to produce some antecedent fact, such as prior possession, or title, in order to establish possession in either man. The fact that when the two men were surprised, under circumstances certain to result in forfeiture of the automobile, destruction of the liquor, fine, and imprisonment, they made oral statements consistent with the physical facts, tended to strengthen somewhat, and certainly did not diminish, the probative force of the physical facts. When we leave the admitted facts and resort to the testimony generally, Newell's claim of possession is verified, and the claim which the state would force on the unwilling defendant is negatived.

All the conditions essential to possession in Newell alone were present. Against them stood nothing but the fact that the defendant was knowingly accompanying unlawful transportation of liquor by another. That fact was consistent with the defendant's innocence, and was clearly insufficient to prove possession by him beyond a reasonable doubt. Indeed, the evidence was insufficient to prove possession by the defendant at all. There was no more evidence that the defendant was aiding and abetting possession by Newell than there was that the defendant was in possession himself, and it seems he was convicted because he was in bad company—something which, with all its rigor, the statute does not cover.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the defendant's motion for his discharge.