No. 54,756

STATE OF KANSAS, *Appellant*, v. JANET P. FLINCHPAUGH, *Appellee*.

(659 P.2d 208)

Opinion filed February 19, 1983.

*Keith D. Hoffman,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

No appearance by appellee.

The opinion of the court was delivered by

FLOYD H. COFFMAN, District Judge, Assigned: The State of Kansas appeals the dismissal of its prosecution against Janet Flinchpaugh for possession of cocaine, its salts, isomers, and salts of isomers, pursuant to K.S.A. 65-4127a and K.S.A. 65-4107(*b*)(5). Possession of cocaine is a class C felony. The defendant was charged with involuntary manslaughter in a separate prosecution.

Following a preliminary hearing the magistrate found probable cause. The defendant moved to dismiss and the parties stipulated to these facts. Janet Flinchpaugh, while driving in Abilene, Kansas, during the late evening hours of November 13, 1981, was involved in an automobile collision. As a result of the impact, the driver of the other car died. Defendant suffered injuries and was taken to the hospital where she consented to the drawing of her blood. Samples of her blood were sent to the Kansas Department of Health and Environment in Topeka. Cocaine and/or benzoylecgonine was found in the blood samples. Benzoylecgonine is a metabolite of cocaine. In order for traces to be in the blood, cocaine must first have been present. The State had no direct evidence of how or when the chemicals were introduced into the defendant's system. The charge of possession is based solely on the result of the testing of the defendant's blood. The trial court, taking the case under advisement following oral argument, observed: "[A] controlled substance in the system controls the body and it is impossible to control the substance once in the bloodstream." Later, by memorandum decision, Judge Christner sustained the defendant's motion to dismiss stating "[a] human being does not possess a narcotic drug which is located in his bloodstream." The State appeals the dismissal through K.S.A. 22-3602(*b*)(1), and (*b*)(3). (Jurisdiction is taken under the former.)

The State's information charged the defendant with unlawfully, feloniously, and willfully possessing or having under her control cocaine, its salts, isomers, and salts of isomers. The relevant statutes are K.S.A. 65-4127a and K.S.A. 65-4107(*a*)and (*b*)(5):

65-4127a. "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture, possess, have under his control, possess with intent to sell, sell, prescribe, administer, deliver, distribute, dispense or compound any opiates, opium or narcotic drugs. Any person who violates this section shall be guilty of a class C felony, except that, upon

conviction for the second offense, such person shall be guilty of a class B felony, and upon conviction for a third or subsequent offense, such person shall be guilty of a class A felony, and the punishment shall be life imprisonment."

65-4107. "(a) The controlled substances listed in this section are included in schedule II;

"(b) any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis or by combination of extraction and chemical synthesis:   .  .  .  .

.  .  .  .

(5) cocaine, its salts, isomers and salts of isomers."

These statutes are similar to the Uniform Controlled Substances Act. This court in *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976), in an opinion by Chief Justice Fatzer, observed:

"The Uniform Controlled Substances Act, (K.S.A. 65-4101 *et seq.*) does not define 'possession.' (See K.S.A. 21-3102[1].) In *State v. Neal*, 215 Kan. 737, 529 P.2d 114, we defined 'possession,' citing PIK Criminal, Ch. 53.00, at p. 69 (1971):

" 'Possession. Having control over a place or thing with knowledge of and the intent to have such control. State v. Metz, 107 Kan. 593, 193 Pac. 177 (1920); City of Hutchinson v. Weems, 173 Kan. 452, 249 P.2d 633 (1952).  .  .  .'

".  .  . Knowledge signifies awareness and is a requirement for 'possession.'

" 'Knowledge of the presence of a narcotic or dangerous drug as embraced within the concept of physical control with the intent to exercise such control is essential.  .  .  .' (28 C.J.S., Drugs and Narcotics Supplement, § 160 [1974], p. 235.)"

Justice Burch, in a case concerning alleged unlawful possession of liquor, wrote:

"[C]orporeal possession is the continuing exercise of a claim to the exclusive use of a material thing. The elements of this possession are, first, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and second, the effective realization of this attitude." *State v. Metz*, 107 Kan. 593, 596, 193 Pac. 177 (1920).

The editors of PIK Crim. 2d 64.06 in defining Unlawful Possession of a Firearm - Felony, added to the requirement in the statute (K.S.A. 21-4204) that the element of "possession of the firearm" be done "knowingly," commenting:

"This construction of the word 'possession' is consistent with many Kansas cases which recognize that the elements of possession require a mental attitude that the possessor intended to possess the property in question and to appropriate it to himself." See *State v. Metz*, 107 Kan. 593, and *City of Hutchinson v. Weems*, 173 Kan. 452, 249 P.2d 633 (1952).

" 'Control, as used in [the] statute making it unlawful for any

person to possess or control any narcotic drug, is given its ordinary meaning, namely, to exercise restraining or directing influence over . . . *Speaks v. State,* 3 Md. App. 371, 239 A.2d 600, 604." Black's Law Dictionary 298 (5th ed. 1979).

Once a controlled substance is within a person's system, the power of the person to control, possess, use, dispose of, or cause harm is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities. The essential element of control is absent. Evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance. The Court of Special Appeals of Maryland has agreed:

"Once a narcotic drug is injected into the vein, or swallowed orally, we think it apparent that it is no longer within 'one's control' or held at 'one's disposal.' And it would likewise be beyond the taker's ability to exercise any restraining or directing influence over it. Consequently, once the drug is ingested and assimilated into the taker's bodily system, it is no longer within his control and/or possession in the sense contemplated by Section 277." *Franklin v. State,* 8 Md. App. 134, 138, 258 A.2d 767 (1969), *cert. denied* 257 Md. 733 (1970).

See *State v. Downes,* 31 Or. App. 1183, 572 P.2d 1328 (1977); and *State v. Yanez,* 89 N.M. 397, 553 P.2d 252 (Ct. App. 1976).

The State also contends the presence of a controlled substance in one's bloodstream is sufficient circumstantial evidence alone to prove possession of the substance at the time immediately before the substance was introduced into the person's system. In other words, the person must have possessed the drug before it was ingested.

In *Franklin v. State,* 8 Md. App. 134, the defendant was brought to a hospital in a semi-conscious state. Several hours later he acknowledged he had taken heroin; the treating doctor testified the defendant's condition was entirely compatible with having had an overdose of heroin; and this evidence was held sufficient to support a conviction for possession of heroin.

In *State v. Yanez,* 89 N.M. 397, the defendant was convicted of possession of morphine. The defendant was observed by police participating in what was thought to be a drug sale. After the occurrence, the defendant purchased two hypodermic needles and went to a service station restroom. There police found one of the needles which they believed the defendant had used. Marks on the defendant's arm were thought to be from use of the needle. Defendant was arrested for possession of heroin and

transported to a hospital where a urine test revealed the presence of morphine. The court found the evidence sufficient to support the conviction.

In *State v. Downes*, 31 Or. App. 1183, an undercover police officer saw a third person inject phencyclidine (PCP) into the defendant's arm. The Oregon Court of Appeals held this was use but not possession of the drug, noting Oregon had one criminal statute for "use," and another statute for "possession" of dangerous drugs.

Circumstantial evidence is evidence that tends to prove a fact in issue by proving other events or circumstances which, according to the common experience of mankind, are usually or always attended by the fact in issue, and therefore affords a basis for a reasonable inference by the jury or court of the occurrence of the fact in issue. *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, Syl. ¶ 6, 431 P.2d 518 (1967).

In a criminal prosecution, the defendant must be proven guilty beyond a reasonable doubt of each element of the crime charged. Fourteenth Amendment of the United States Constitution; *In re Winship*, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970); *State v. Douglas*, 230 Kan. 744, 640 P.2d 1259 (1982).

Returning to the definition of possession, knowledge is an essential ingredient of the crime of illegal possession of a controlled substance. The defendant must know of the presence of the controlled substance. *State v. Faulkner*, 220 Kan. at 156. The intent to possess, to appropriate the drug to oneself, constitutes the requisite mental attitude for conviction of possession. *State v. Metz*, 107 Kan. at 596.

Discovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, but it is not sufficient evidence to establish guilt beyond a reasonable doubt. The absence of proof to evince knowledgeable possession is the key. The drug might have been injected involuntarily, or introduced by artifice, into the defendant's system. The prosecution did not establish that defendant ever knowingly had control of the cocaine. None of the courts in the three cases cited previously upheld possession convictions based on the physical condition of the defendant alone. In the narrow holding of this case, we find that evidence of a controlled substance assimilated in one's blood does not establish possession of that substance as

defined by K.S.A. 65-4127a, nor is it adequate circumstantial evidence to show prior possession by that person. Other corroborating evidence combined with positive results of a blood test could be sufficient evidence to prove guilt beyond a reasonable doubt depending on the probative value of the corroborating evidence.

The purpose of the Uniform Controlled Substances Act, 9 U.L.A. 197 (1979), is to regulate the drug traffic. The Commissioners on Uniform State Laws explained:

"The Uniform Controlled Substances Act is designed to supplant the Uniform Narcotic Drug Act, adopted by the National Conference of Commissioners on Uniform States Laws in 1933, and the Model State Drug Abuse Control Act, relating to depressant, stimulant, and hallucinogenic drugs, promulgated in 1966. With the enactment of the new Federal narcotic and dangerous drug law, the 'Comprehensive Drug Abuse Prevention and Control Act of 1970' (Public Law 91-513, short title 'Controlled Substances Act' [21 U.S.C.A. § 801 et seq.]), it is necessary that the States update and revise their narcotic, marihuana, and dangerous drug laws.

"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.

"The exploding drug abuse problem in the past ten years has reached epidemic proportions. No longer is the problem confined to a few major cities or to a particular economic group. Today it encompasses almost every nationality, race, and economic level. It has moved from the major urban areas into the suburban and even rural communities, and has manifested itself in every State in the Union.

"Much of this major increase in drug use and abuse is attributable to the increased mobility of our citizens and their affluence. As modern American society becomes increasingly mobile, drugs clandestinely manufactured or illegally diverted from legitimate channels in one part of a State are easily transported for sale to another part of that State or even to another State. Nowhere is this mobility manifested with greater impact than in the legitimate pharmaceutical industry. The lines of distribution of the products of this major national industry cross in and out of a State innumerable times during the manufacturing or distribution processes. To assure the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources, it becomes critical to approach not only the control of illicit and legitimate traffic in these substances at the national and international levels, but also to approach this problem at the State and local level on a uniform basis." 9 U.L.A. at 188.

Once a controlled substance is in the human system it is beyond the control which the uniform act contemplated. The

deleterious effects of the drug are already in progress. What the act seeks to prevent has occurred. The "controlled substance" is no longer susceptible to the control the act seeks to regulate. Without proof of a person's knowledgeable prior possession of the drug, punishment for presence of the drug in a person's system is not consistent with the design of the Uniform Controlled Substances Act.

We affirm dismissal by the trial court.