NOT DESIGNATED FOR PUBLICATION

No. 117,475

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN G. WEEKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed September 21, 2018. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.

PER CURIAM:  In 2016, a jury convicted Sean G. Weeks of three counts of aggravated indecent liberties with a child for acts committed with his daughter between 2006 and 2011. He was sentenced under Jessica's Law. He timely appeals, raising three issues:  that the statute of limitations had run on Count 1; that the evidence was insufficient to prove his intent; and that the district court erred in denying him a downward departure from the Jessica's Law sentence. For the reasons stated below, we affirm.

1

*Factual and Procedural Background*

In 2014, just before turning 14 years old, K.W. disclosed to her best friend that Weeks had repeatedly touched her inappropriately when she was ages 6 to 10. The best friend told her own mother, who discussed it with K.W. and ultimately told K.W.'s mother, Weeks' wife. While the mothers met, K.W. called Weeks to inform him that she had told others about his abuse. She testified that Weeks responded, "'I'll match my story to whatever you pick if you decide not to tell the truth.'"

At the preliminary hearing, K.W. detailed four incidents in Douglas County, which became the bases for Counts 1 through 4:

1.  When she was around seven years old, Weeks entered her bedroom and started tickling her butt then began touching her chest. He moved his hand down and rubbed and slid it over her vagina for 5 to 10 minutes. All of the touching was done over her clothes.

2.  When she was eight or nine years old, she was laying on the couch with Weeks, watching a movie, when he "started touching my butt and then moving his hand to my vagina." He was "rubbing and sliding his hand" there for 5 to 15 minutes. All of the touching was done over her clothes.

3.  When she was seven or eight years old, Weeks was helping her with her bath. After she was fully dressed, Weeks took off his pants and told K.W. to rub his penis. She testified that something white came out.

4. When she was 10 years old, she was camping in a tent in the backyard with Weeks and watching movies. Weeks then "started to touch my vagina and

2

then my boobs and then my butt" with his hands. All of the touching was done over her clothes.

A law enforcement officer suggested that K.W. and her mother make recorded phone calls to Weeks to try to get an admission from him. They did so. The jury heard the recordings and saw a recording of the officer's interview with Weeks. The jury also heard K.W. testify that Weeks raped her in a hotel in Johnson County when she was eight or nine years old, but Weeks was not charged for that event.

At trial, the jury heard testimony from K.W. and people to whom she had disclosed the abuse—her older brother, her best friend, her best friend's mother, her own mother, and a law enforcement officer who interviewed Weeks as part of the investigation. The jury convicted Weeks on Counts 1 through 3, corresponding to the first three incidents above, but acquitted him on Count 4, the tent incident. The district court sentenced Weeks according to Jessica's Law—life imprisonment with no opportunity for parole for 25 years.

Weeks raises three issues on appeal:

- Count 1 was time-barred and the district court erred in refusing to dismiss it;
- Insufficient evidence supported the convictions in Counts 1 and 2; and
- The district court erred in denying his motion for a departure sentence.

*Statute of Limitations on Count 1*

Weeks first contends that Count 1, which alleged crimes committed as early as September 2006, is barred by the statute of limitations.

*Standard of Review*

Resolution of this issue requires us to examine the relevant statute and the district court's factual findings. Statutory interpretation is a matter of law that we review de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). But we review factual findings of the district court to determine whether they are supported by substantial competent evidence. Substantial competent evidence is generally any legal and relevant evidence that a reasonable person might accept as sufficient to support a conclusion. *State v. Gonzalez*, 290 Kan. 747, 756-57, 234 P.3d 1 (2010).

*Discussion*

At the time of the crimes, the statute of limitations required prosecutions for child sex crimes to be "commenced within five years" after the crime was committed, unless some exception applied to toll the limitations period. K.S.A. 2006 Supp. 21-3106(4) (re-codified in 2011 to K.S.A. 21-5107[d]). The State filed its first information in December 2014, alleging acts occurring during 2010—all within the five-year period. But K.W. testified at the preliminary hearing that the touching occurred as early as 2006, so the district court allowed the State to amend the information. Count 1 of the amended information alleged crimes committed from September 2006 through September 2011— some outside the five-year period. The State moved the district court to find that the statute of limitations did not bar prosecution of Count 1. The district court agreed, finding that a statutory exception applied to toll the start of the limitations period and that the prosecution had timely begun. Weeks argues that the district court erred in this ruling.

The district court applied the exception in K.S.A. 2006 Supp. 21-3106(5)(f), which tolls the limitations period if, at the time of the crime, the victim was under the age of 15 and "was of such age or intelligence that the victim was unable to determine that the acts constituted a crime." Under that exception, the statute of limitations begins to run when

4

the victim becomes able to determine the criminal nature of the conduct. The burden is on the State to prove by substantial competent evidence that an exception applies. K.S.A. 2006 Supp. 21-3106(5)(f) (re-codified in 2011 to K.S.A. 21-5107[e][6]). It is undisputed that K.W. was under 15 years old, thus the parties dispute only whether she was "unable to determine" that the acts were criminal.

K.W. testified at the preliminary hearing that she did not know Weeks' actions were illegal when the bedroom incident occurred, as charged in Count 1, when she was six or seven years old. She testified that she did not at first know that the touching by her father was illegal, but started realizing that around the age of 9 or 10.

Weeks argues that this testimony, which shows only K.W.'s personal knowledge, fails to show that K.W. did not have the ability to determine that the acts were criminal, as required by the statute.

Both parties cite *State v. Anderson*, No. 108,415, 2013 WL 6331600 (Kan. App. 2013) (unpublished opinion), the only case focusing on the victim's ability to understand that the defendant's action constituted a crime. There, a panel of this court found that the distinction between being unable to determine that an act was wrong and that an act constituted a crime was legally significant. 2013 WL 6331600, at *15. The issue was whether the victim's telling a friend, when she was in sixth grade, that she did not think the defendant's conduct "was right" constituted substantial competent evidence to show that the victim "had the ability . . . to understand that [defendant's] conduct constituted a crime." 2013 WL 6331600, at *15. But the panel chose not to answer that question because other evidence showed the charges had been filed within the five-year period of limitations. 2013 WL 6331600, at *16. Thus, *Anderson* does not inform our analysis here or suggest a different conclusion.

5

Weeks' argument fails on the facts—the State *did* introduce evidence of K.W.'s ability to determine criminality. K.W. testified that when she was six, seven, and eight years old, she did not know that it was illegal for someone to try to touch her sexually. She also testified that she first figured out that the touching by her father was illegal when she was 9 or 10 years old. "Figure out" is defined as to "discover, determine" and as "to understand; reason out." Merriam-Webster's Collegiate Dictionary 467 (11th ed. 2014); Webster's New World College Dictionary 540 (5th ed. 2016). The reasonable inference is that if she had been able to discover, determine, understand, or reason out the criminality of Weeks' acts earlier, she would have. K.W.'s uncontroverted testimony constitutes substantial competent evidence that the exception in K.S.A. 2006 Supp. 21-3106(5)(f) applied to toll the start of the limitations period to September 2009, when K.W. turned nine years old and was first able to determine the criminal nature of Weeks' acts.

That five-year statute of limitations period thus began in September 2009 and expired in September 2014. The State's information was not filed until December 2014, so it is outside that limitations period. But a change in the law applies to extend the limitations period. In 2012, the Legislature passed an amendment providing that the five-year limitations period for sex crimes against children would begin not at the time of the crime but when the child turned 18. K.S.A. 2012 Supp. 21-5107(f). That amendment applies retroactively to crimes for which the five-year statute of limitations had not expired by its effective date of July 1, 2012. See *State v. Nunn*, 244 Kan. 207, 218, 768 P.2d 268 (1989). Thus, any child sex crimes committed *after* July 1, 2007 are subject to this extended tolling. Child sex crimes committed *before* July 1, 2007 cannot be prosecuted unless an existing tolling exception applies to extend the limitations period until at least July 1, 2007. See *Nunn*, 244 Kan. at 218.

As discussed above, an exception applied here to toll the start of the limitations period until September 2009. See K.S.A. 2006 Supp. 21-3106(5)(f). Because this date is after July 1, 2007, the case was not time-barred as of July 1, 2012, and thus comes within

6

the reach of K.S.A. 2012 Supp. 21-5107(f). That statute extends the start date of the limitations period to the day after K.W.'s eighteenth birthday in September 2018. Prosecution on Weeks' crimes against her could be timely started until 2023. The district court did not err in allowing prosecution on Count 1.

*Sufficiency of the Evidence for Counts 1 and 2*

*Standard of Review*

In cases challenging the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether the evidence was sufficient for a rational fact-finder to find the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In making that determination, we cannot reweigh evidence, assess witness credibility, or resolve conflicting evidence. *State v. Betancourt*, 301 Kan. 282, 290, 342 P.3d 916 (2015).

*Discussion*

Weeks argues that the State failed to prove the intent element of the crimes charged. Before a person may be convicted of a criminal offense, the State must prove guilt beyond a reasonable doubt as to every element of the crime. *State v. Flinchpaugh*, 232 Kan. 831, 835, 659 P.2d 208 (1983). The jury may draw reasonable inferences from basic facts to ultimate facts. *State v. Wimberly*, 246 Kan. 200, 207, 787 P.2d 729 (1990).

In Counts 1 and 2, Weeks was convicted of aggravated indecent liberties with a child under K.S.A. 2006 Supp. 21-3504(a)(3)(A) (re-codified in 2011 to K.S.A. 21-5506[b][3][A]). That crime includes a physical action element—lewd fondling or touching of a child—and a specific intent element. The State must prove the defendant acted "with the intent to arouse or to satisfy the sexual desires of either the child or the

7

offender, or both." K.S.A. 2006 Supp. 21-3504(a)(3)(A). Weeks argues that the State failed to meet its burden of proof by not introducing direct evidence of intent.

Direct evidence of sexual intent is unnecessary, however, in this type of case—circumstantial evidence may be enough. *State v. Clark*, 298 Kan. 843, 849-50, 317 P.3d 776 (2014). Circumstances tending to show sexual intent include (1) a pattern of touching that extends over time; (2) the places on the body touched; (3) the nature of the touching; (4) the defendant's consciousness of guilt; (5) a desire for secrecy; and (6) the isolation of the victim. See *State v. Reed*, 300 Kan. 494, 502-03, 322 P.3d 172 (2014) (evaluating evidence of these factors). This list is not exclusive or exhaustive.

Weeks argues that some indicia applied in *Reed* were not proved here. First, as to pattern of conduct, he argues that K.W.'s testimony was too vague to establish a pattern of conduct and that her testimony about the frequency of the touching was inconsistent. Weeks highlights her testimony that he touched her "[o]nce a week or once or twice every other week, something like that." But K.W. also testified that Weeks was a truck driver and that the touching occurred "[w]henever he was home." From this testimony, a rational fact-finder could conclude that Weeks exhibited a pattern of touching K.W. which would support a finding of sexual intent.

As to the second and third indicia—the places touched and the nature of the touching—K.W.'s testimony shows that Weeks' touching of her body as alleged in Counts 1 and 2 was not inadvertent or accidental. Count 1 concerned the incident of inappropriate touching in her bedroom, which started out as tickling her on the stomach, a type of touching that could be innocent. But Weeks then moved to touching her chest and vagina over her clothes, "moving" his hand there for 5 to 10 minutes. K.W. testified that "[i]t was obviously on purpose and not on accident." During the incident on the couch, the subject of Count 2, Weeks touched her vagina over her clothes by "rubbing and

8

sliding his hand" there for 5 to 15 minutes. This evidence supports a reasonable inference that Weeks acted with sexual intent.

As to the fourth indicia—the defendant's consciousness of guilt—Weeks points to the recorded phone calls with his wife and with K.W. in which Weeks acknowledged the touching but denied that it was sexual. But the jury also heard K.W. testify that Weeks told her he stopped touching her because he realized it was wrong. It is not our role to resolve conflicting testimony or make credibility determinations. Viewing the evidence in the light most favorable to the State, we find it could support an inference that Weeks showed guilt over his conduct.

Evidence of the fifth indicia—the defendant's desire to keep the acts secret—was also presented. Weeks told K.W. when she was six years old that if she told anyone about the touching, the family might lose their house because they were financially unstable. Weeks repeated this to K.W. when she was 10 or 11 years old, and she believed him. A defendant's desire to keep his actions secret also suggests consciousness of guilt under the fourth indicia.

The sixth indicia of sexual intent is that the defendant isolated the victim during the incidents. This factor is met because the acts in K.W.'s bedroom were behind a closed door, as were, apparently, the acts in the bathroom after K.W. bathed.

Weeks' final argument is that his acquittal on Count 4, which alleged touching over the clothes in a tent in Eudora, shows that K.W.'s testimony was insufficient to support his conviction of Counts 1 and 2, which also alleged touching over her clothes. But the relevance of the acquittal on this one charge is not apparent and Weeks did not elaborate on this argument in his brief. Failure to brief constitutes waiver and abandonment of the issue. *State v. Torres*, 280 Kan. 309, Syl. ¶ 7, 121 P.3d 429 (2005). As a result, we reject this argument.

9

The evidence above, viewed in the light most favorable to the State, constitutes substantial competent evidence from which a rational fact-finder could conclude that Weeks acted with the intent to arouse or satisfy his sexual desires. Thus, the State produced sufficient evidence for conviction under K.S.A. 2006 Supp. 21-3504(a)(3)(A).

*Mitigating Factors for a Durational Departure*

Weeks' final claim of error is that the district court abused its discretion by denying his motion for a departure from the sentence prescribed for aggravated indecent liberties with a child.

*Standard of Review*

We review a district court's decision denying a motion to depart from a Jessica's Law sentence for an abuse of discretion. *State v. Jolly*, 301 Kan. 313, Syl. ¶ 7, 342 P.3d 935 (2015). A court abuses its discretion if it bases its decision on an error of law or an error of fact or if no reasonable person would have adopted the view taken by the district court. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

*Discussion*

A first-time offender who is over 18 years old and is convicted of aggravated indecent liberties with a child must be sentenced to life imprisonment with a mandatory minimum term of imprisonment of 25 years. K.S.A. 2006 Supp. 21-4643(a)(1)(c) (re-codified in 2011 to K.S.A. 21-6627[a][1][C]). But the court may impose a departure sentence if it "finds substantial and compelling reasons, following a review of mitigating circumstances." K.S.A. 2006 Supp. 21-4643(d) (re-codified in 2011 to K.S.A. 21-6627[d][1]).

Weeks moved for a departure from the Jessica's Law sentence, claiming mitigating circumstances, but the district court denied the motion. Weeks asserts that two statutory factors warrant a departure: the lack of "significant history of prior criminal activity" and "[t]he crime was committed while the defendant was under the influence of extreme mental or emotional disturbances." K.S.A. 2006 Supp. 4643(d)(1), (2) (re-codified in 2011 to K.S.A. 21-6627[d][2][A], [B]).

The district court recognized that the strongest mitigating factor was that Weeks had no significant criminal history. It did not grant relief on this basis, however, and did not explain its reasons. Yet Weeks has shown no reversible error because a district court is not obligated to grant a departure sentence simply because mitigating factors exist. See *Jolly*, 301 Kan. at 323-24.

Weeks also argues that the district court erred in not finding that his mental health history constituted a mitigating circumstance under K.S.A. 2017 Supp. 21-6627(d)(2)(B). At trial, K.W. testified that her father had posttraumatic stress disorder, dealt with bouts of depression, and would not remember periods of time. She said she would watch him be "here" one minute and then he would just get lost "in a different world." She testified that "his aggression and everything gets worse whenever he goes into that spell." At sentencing, Weeks' counsel argued that there were large periods of Weeks' life that he could not remember and that he suffered from extreme anger issues after his discharge from the military. Weeks had received treatment and medication for his conditions for a period of time, which improved his condition.

The district court found this evidence of a "lifetime of mental illness or disturbances" did not meet the statutory requirement of K.S.A. 2017 Supp. 21-6627 that "[t]he crime was committed while the defendant was under the influence of extreme mental or emotional disturbances." It reasoned that the statute required that the defendant

11

was experiencing such disturbances at the moment of the crime. The temporal specificity of the statute's language supports that conclusion.

Weeks neither challenges that interpretation nor cites evidence that he was suffering an extreme mental or emotional disturbance at the times of any of his crimes. We find the district court did not abuse its discretion in finding that Weeks failed to show substantial and compelling reasons to justify a departure sentence.

For the reasons stated above, we affirm Weeks' convictions and sentences.