NOT DESIGNATED FOR PUBLICATION

No. 128,672

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW XAVIER BAKER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed June 12, 2026. Reversed in part, dismissed in part, and remanded.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: Andrew Xavier Baker appeals the district court's revocation of his probation and award of jail time credit. Baker entered a no-contest plea to attempted aggravated battery and the district court imposed a presumptive disposition of probation. The State later alleged that Baker violated the conditions of probation in multiple ways. The State produced evidence of Baker's probation violation, and the court revoked probation on one of the alleged violations. On review of the record, we find that because a previous sanction served by Baker was imposed by his supervision officer and not the court, the court was required to comply with the intermediate sanctions scheme found in

1

K.S.A. 22-3716 or make specific findings that a statutory exception applied to intermediate sanctions before revoking Baker's probation. As a result, we reverse the district court's revocation of Baker's probation and remand this case to the district court for further proceedings. Because we remand the case on the probation revocation issue, we need not address Baker's jail credit challenge.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, the State charged Baker with aggravated battery. The circumstances surrounding the charge are immaterial to the issues presented on appeal. Baker ultimately negotiated an agreement with the State, and on February 20, 2024, he pleaded no contest to an amended charge of attempted aggravated battery.

About a week after the plea hearing, the State moved to revoke Baker's appearance bond for new crimes allegedly committed by Baker on February 21, 2024—just one day after his plea. It is unclear from the record what transpired with this bond revocation motion, but the district court held a sentencing hearing on March 27, 2024.

At sentencing, the court imposed the presumptive sentencing disposition of probation for 24 months with an underlying prison term of 18 months. The court awarded Baker with no jail time credit. Defense counsel did not object.

Less than two months later, the State filed its first report of a probation violation. On that report, Baker admitted to violating the terms of his probation, waived his right to a probation violation hearing, and agreed to serve a two-day sanction "as directed by the Intensive Supervision Officer." That first violation report was later followed by two more. A final report alleged three violations:  (1) Baker committed new crimes on February 21, 2024; (2) he was discharged from treatment without successfully

2

completing treatment; and (3) he provided a urinalysis (UA) that tested positive for cocaine.

At the probation revocation hearing, Baker did not dispute his arrest for the commission of additional crimes on February 21, 2024, but argued that the crimes had been committed before he was placed on probation in this case. He initially disputed that he failed to complete treatment because he claimed his initial evaluation was modified and there was some confusion about whether his treatment was actually complete. Even so, Baker agreed that he "quit going" to treatment and ultimately agreed that he was unsuccessfully discharged, essentially stipulating to that allegation. Baker admitted that he tested positive for cocaine use. Baker's probation officer testified that Baker had tested positive for cocaine on one of his UAs. He had previously submitted clean UAs on eight prior occasions, though Baker was still attending treatment when he submitted the clean UAs. The probation officer also confirmed that Baker never failed to report as directed.

The court revoked Baker's probation, citing only the UA positive for cocaine and Baker's admission about using cocaine as the reason for revoking. Although the matter was not discussed at length, the court mentioned that Baker had previously served a two-day jail sanction for a probation violation. Defense counsel did not object but concurred that an intermediate sanction had been imposed previously. The court awarded Baker two days of jail time credit at the probation revocation. In the journal entry of probation revocation, the district court marked only the box indicating a violation of the conditions of probation. The box indicating the commission of a new crime was not marked.

Baker timely appealed.

ANALYSIS

I.    *Revocation of Baker's Probation Without First Imposing Intermediate Sanctions*

Baker challenges the district court's revocation of his probation without first imposing intermediate sanctions. As noted above, the State alleged three violations of the conditions of Baker's probation, but the district court relied solely on his admitted use of cocaine—a technical violation, not the commission of a new crime.

*Preservation*

As a preliminary matter, the State contends that Baker has failed to preserve this issue. At the probation revocation hearing, Baker's counsel explained that he did not dispute the new criminal charges stemming from February 21, 2024, but that he did dispute them as a basis for probation revocation because the crime took place before he was sentenced to probation in this case. The court asked the State what its position was regarding the allegation of a new crime "if it was committed before he was on probation?" The State agreed the new crime "wasn't an aspect of violating his probation. But if the court wanted to look at him as being . . . a danger to society," that crime could form a basis for such a conclusion.

When the topic of Baker's prior sanction was raised, it was by the court noting "this is a second violation." Baker's attorney responded, "I think the first one was just . . . just sanctions." Although the transcript is unclear because the attorneys talked over one another, Baker's attorney appeared to initially try to clarify the type of sanction. Still, when the court noted that Baker had already had an intermediate sanction, his counsel did not argue that additional intermediate sanctions were required by law but essentially conceded in the district court's assessment of the circumstances.

4

Preservation of an issue demands a specific and timely objection to the proposed ruling of a court to permit a court to reconsider its proposed ruling before final judgment. See K.S.A. 60-404; *State v. Showalter*, 318 Kan. 338, 345-46, 543 P.3d 508 (2024) ("The purpose of the rule is self-evident: a timely and specific objection allows the district court to consider as fully as possible—in context—whether the evidence should be admitted, which reduces the chances of using tainted evidence and thus avoids possible reversal and a new trial."). While the objection at issue here relates to the operation of a statute, not the admission of evidence, the principle still holds true. Baker did not object that the district court could not or should not consider his previous intermediate sanction when deciding whether to revoke probation for the current violation of probation. The issue was not properly preserved.

Baker anticipated this conclusion and alternatively argued for two of three recognized exceptions to preservation: (1) consideration of the claim is necessary to prevent the denial of fundamental rights, and (2) consideration of the claim involves only a question of law arising on proved or admitted facts, determinative of the case. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). We question whether the first exception applies. Baker argues that the right to liberty is a fundamental right. But the government may deprive a person of liberty after due process of law. U.S. Const. amend. XIV, § 1; Kan. Const. Bill of Rights, § 18; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Without making a decision on his first claimed exception, because Baker challenges the district court's application of a statute, the second exception he seeks to apply justifies consideration of the matter in this appeal. The facts of Baker's probation revocation are established. The interpretation and application of the statutes governing revocations is a question of law subject to unlimited appellate review. See *Bicknell v. Kansas Department of Revenue*, 315 Kan. 451, 506, 509 P.3d 1211 (2022). Accordingly, in our discretion, we will consider Baker's claim for the first time on appeal. *State v.*

5

*Genson*, 316 Kan. 130, 135-36, 513 P.3d 1192 (2022) (even when exception applies, court has discretion to consider issue raised for the first time on appeal); *State v. Clapp*, 308 Kan. 976, 980, 425 P.3d 605 (2018) (considering challenge to application of intermediate sanctions for the first time on appeal).

*Statutory Interpretation*

Considering the merits of Baker's claim, we acknowledge that a district court has broad discretion to revoke an offender's probation—except as limited by statute. *State v. Dooley*, 308 Kan. 641, 647, 423 P.3d 469 (2018). The pivotal question in this appeal is whether an administrative sanction imposed by a probation officer without court involvement for a violation of one or more conditions of probation constitutes an intermediate sanction necessary to permit revocation of probation without invoking one of the limited exceptions.

Prior to 2013, probation revocation was left almost entirely to the discretion of the sentencing court. See *Clapp*, 308 Kan. at 981. In 2013, the Kansas Legislature amended K.S.A. 22-3716 to add intermediate sanction requirements, which restricted the court's exercise of discretion. L. 2013, ch. 76, § 5. Since 2013, the Legislature has continued to revise the statute. As it currently stands, K.S.A. 22-3716 requires the State to provide notice of a probation violation to the defendant and the court in writing. K.S.A. 22-3716(b)(1). The court must schedule a hearing on the allegations of violation unless the defendant knowingly waives the right. K.S.A. 22-3716(b)(2). Once a probation violation is established, the sentencing court's disposition of probation for a felony offense is governed by K.S.A. 22-3716(c), which provides in material part:

"(c)(1) Except as otherwise provided, if the original crime of conviction was a felony, other than a felony specified in K.S.A. 21-6804(i), and amendments thereto, and a violation is established, the court may impose the following sanctions:

(A) Continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction;

(B) continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and an intermediate sanction of confinement in a county jail to be imposed as a two-day or three-day consecutive period. The total of all such sanctions imposed pursuant to this subparagraph and subsection (b)(4) shall not exceed 18 total days during the term of suspension, except as provided in subsection (h);

(C) if the violator already had a sanction imposed pursuant to subsection (c)(1)(B) related to the crime for which the original supervision was imposed, revocation of the probation, assignment to a community corrections services program, suspension of sentence or nonprison sanction and requiring such violator to serve the sentence imposed, or any lesser sentence and, if imposition of sentence was suspended, imposition of any sentence that might originally have been imposed."

The parties' arguments hinge on the interplay of the provisions of K.S.A. 22-3716(c)(1)(B) and K.S.A. 22-3716(b)(4), which provides in material part:

"(4) Except as otherwise provided, *if the defendant waives the right to a hearing*, the following sanctions may be imposed *without further order of the court*:

(A) If the defendant was on probation at the time of the violation, the defendant's supervising court services officer, with the concurrence of the chief court services officer, may impose an intermediate sanction of confinement in a county jail, to be imposed as a two-day or three-day consecutive period. The total of all such sanctions imposed pursuant to this subparagraph and subsections (b)(4)(B) and (c)(1)(B) shall not exceed 18 total days during the term of supervision, except as provided in subsection (h); and

(B) if the defendant was assigned to a community correctional services program at the time of the violation, the defendant's community corrections officer, with the concurrence of the community corrections director, may impose an intermediate sanction of confinement in a county jail, to be imposed as a two-day or three-day consecutive period. The total of all such sanctions imposed pursuant to this subparagraph and

7

subsections (b)(4)(A) and (c)(1)(B) shall not exceed 18 total days during the term of supervision, except as provided in subsection (h)." (Emphasis added.)

Highly summarized, the distinguishing feature between a two-or-three-day sanction imposed under K.S.A. 22-3716(b)(4) and a similar sanction imposed under K.S.A. 22-3716(c)(1)(B) is the authority imposing the sanction. Under K.S.A. 22-3716(b)(4), the probation officer supervising the defendant has authority to impose a short sanction, but only if the defendant waives his or her right to a hearing on the probation violation. Under K.S.A. 22-3716(c)(1)(B), the court imposes the sanction for a violation. This sanction may be imposed by the court after the defendant waives a hearing or after the violation has been established by the State.

Notably, however, the right to revoke probation after an intermediate sanction, as authorized in K.S.A. 22-3716(c)(1)(C), refers only to the intermediate two- or three-day sanctions imposed by the court under K.S.A. 22-3716(c)(1)(B). Presumably, if the Legislature had wanted to encompass intermediate sanctions imposed by court service officers or community correction officers under K.S.A. 22-3716(b)(4), the Legislature would have referenced that section of the statute, but it did not. For example, the Legislature clearly referenced K.S.A. 22-3716(b)(4)(A), (b)(4)(B), and (c)(1)(B) when discussing the total number of days a probation offender can serve as sanctions during the probation term in K.S.A. 22-3716(b)(4)(B).

A different panel of this court applied similar reasoning to reverse a probation revocation when a prior sanction had been imposed by a probation officer and no exceptions provided by K.S.A. 22-3716(c)(7) applied to the case. See *State v. McRoberts*, 65 Kan. App. 2d 481, 491-92, 567 P.3d 905, *rev. denied* 320 Kan. 866 (2025). As the State contends, one panel of this court is not bound by the decision of another panel. But we may choose to adopt the reasoning of another panel if persuaded by it, and we are so

persuaded. See *State v. Mason*, 66 Kan. App. 2d 209, 221, 579 P.3d 978 (2025), *petition for rev. filed* October 30, 2025.

From the record, it appears that the intermediate sanction imposed on Baker prior to this revocation was a sanction imposed by a supervising officer under K.S.A. 22-3716(b)(4), not a sanction imposed by the court under K.S.A. 22-3716(c)(1)(B). As a result, Baker correctly argues that the district court erred in revoking his probation under the authority provided by K.S.A. 22-3716(c)(1)(C), as interpreted by *McRoberts*.

*Application of Exception*

Even so, the State presents an alternative argument on appeal—that the revocation may be affirmed under the new-crime exception of K.S.A. 22-3716(c)(7)(C), citing an unpublished decision from a different panel of this court. See *State v. Whiteford*, No. 127,393, 2025 WL 1720587, at *3-5 (Kan. App.) (unpublished opinion), *rev. granted* 321 Kan. 795 (2025). There are significant distinguishing details between *Whiteford* and Baker's case, however.

In *Whiteford*, the district court apparently relied on the new crime exception of K.S.A. 22-3716(c)(7)(C) to justify its decision to revoke probation. In contrast, here, the district court gave no indication that it relied on any exception to intermediate sanctions to revoke Baker's probation. This is significant because, even when a violation of probation is established, a district court possesses discretion to reinstate probation without or without a jail sanction. See K.S.A. 22-3716(c)(1)(A) and (B); K.S.A. 22-3716(c)(7) ("The court *may* revoke" probation without first imposing an intermediate sanction under specified circumstances.). Even if K.S.A. 22-3716(c)(7)(C) authorized the district court to revoke Baker's probation for drug use as the commission of a new crime, this court cannot divine, as through a crystal ball, that the district court would have exercised its discretion to do so. See *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285

9

(2020) ("A reviewing court may think it understands how a district court should view these circumstances, but it cannot know for sure until the lower court does the analysis."). Discretion is extended to the district court, not the appellate court.

Moreover, unlike Baker, Whiteford did not challenge the district court's finding that a drug test failure along with her admission of drug use constituted sufficient evidence to establish that she had committed a new crime. See *Whiteford*, 2025 WL 1720587, at *5 (citing *State v. Roubideaux-Davis*, No. 125,764, 2023 WL 5662765, at *7 (Kan. App. 2023) (unpublished opinion). Baker challenges the use of a positive drug test as proof of the commission of a crime. Still, Baker's argument was rejected by a well-reasoned decision in *Roubideaux-Davis*. 2023 WL 5662765, at *3 (noting that district court did not identify exception but considering application of exception nonetheless).

We need not repeat the analysis of *Roubideaux-Davis* here. The *Roubideaux-Davis* court acknowledged long-standing precedent set by the Kansas Supreme Court in *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983). In *Flinchpaugh*, the Kansas Supreme Court recognized that "[d]iscovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug[.]" 232 Kan. at 835. The *Flinchpaugh* court, however, also reasoned that a positive drug test result by itself was insufficient to establish the mens rea aspect for the crime. 232 Kan. at 835.

The *Roubideaux-Davis* court conceded that Roubideaux-Davis' stipulation to using marijuana, methampethamine, alcohol, and oxycodone with fentanyl did not establish his mental state when he possessed the illegal drugs prior to using them. 2023 WL 5662765, at *4. Noting that the standard for probation revocation is merely preponderance of the evidence, not proof beyond a reasonable doubt, however, the *Roubideaux-Davis* court gleaned circumstantial evidence from the record sufficient to conclude that Roubideaux-Davis committed a new offense. 2023 WL 5662765, at *4-5.

But applying the reasoning of *Roubideaux-Davis* to Baker's case also requires the State to prove that the new crime occurred while Baker was on probation. See K.S.A. 22-3716(c)(7)(C). This is why the State could not rely on Baker's commission of a new aggravated battery and criminal possession of a firearm after his plea but before sentencing in this case. With respect to the timeframe in question, there is additional circumstantial evidence to suggest that Baker used, and thus possessed, the cocaine during his probation. The dirty UA occurred on October 9, 2024, approximately seven months into Baker's probation. More significantly, Baker had submitted multiple clean UAs before this dirty one while he was in treatment. This evidence circumstantially proves that Baker used cocaine while he was on probation, but the issue of his mental state remains questionable.

Here, the State alleged that Baker tested positive for cocaine on October 9, 2024, and that Baker "later verbally confirmed." Baker stipulated to this violation. It is unclear what the State meant by "later verbally confirmed." Although Baker's probation officer testified at his revocation hearing, the testimony did not clarify this point. The officer testified that Baker tested positive for cocaine after several negative UAs. Defense counsel then asked, "And he admitted to that; correct?" The officer affirmed without clarifying the nature of the admission. We do not know whether Baker's admission was a confirmation to the use of cocaine or merely to the fact that his UA would be positive for cocaine. But the distinction is important for determining whether the State can present sufficient evidence of Baker's culpable mental state to establish the commission of a new crime.

While *Roubideaux-Davis* established a framework from which a district court might conclude that Baker committed a new offense involving possession of cocaine on probation, the *Roubideaux-Davis* court also noted that it is not the place of an appellate court to make that determination in the first instance. 2023 WL 5662765, at *9 (citing *State v. Wilson*, 314 Kan. 517, 525, 501 P.3d 885 [2022]).

11

Using a probationer's admissions to establish the new crime exception to intermediate sanctions may raise a host of other issues that preclude the district court's use of the exception under the circumstances of Baker's case. Baker should have the opportunity to raise some or all of these objections if the State proceeds to seek revocation on the basis of the new crime exception. Those objections may be considered by the district court in the exercise of its discretion in deciding an appropriate disposition for Baker's probation on remand.

II.     *Jail Time Credit*

Baker also challenges the district court's jail time credit award. He concedes that he did not raise this issue in the district court but contends resolution for the first time on appeal is appropriate because the issue involves a question of law on proved or admitted facts and is necessary to prevent the deprivation of a fundamental right.

As acknowledged in the probation revocation discussion above, the general rule is that an appellate court does not consider issues raised for the first time on appeal, even those of a constitutional dimension. *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024). Further complicating Baker's argument is that, although the current law regarding the application of jail credit may be clear at this moment (see *State v. Ervin*, 320 Kan. 287, 311, 566 P.3d 481 [2025]), we do not consider that the issue is able to be resolved on the facts currently before us.

Baker claims that the facts surrounding his jail time credit are settled on the appellate record, but his claim addresses incarceration for another offense committed in Leavenworth County the day after he entered his plea in the case which is the subject of this appeal. Baker claims he was incarcerated since November 13, 2024, but the record citations he provides do not establish this fact. The record substantiates his conviction in the other case in Leavenworth County, but the State's report of probation violations

12

alleges only that Baker was convicted in the other Leavenworth County case on September 20, 2024. None of Baker's other citations establish the date of sentencing or the "sentence begins" date established by the Leavenworth County District Court in that case.

An appellate court abuses its discretion by invoking an exception to consider an issue that is not amenable to resolution on appeal because of an insufficient record. *State v. Unruh*, 320 Kan. 260, 265, 565 P.3d 825 (2025). Consideration of Baker's jail time credit, to the extent it requires fact-finding in the form of actual days incarcerated and location, would constitute an abuse of appellate judicial discretion. See *State v. Romey*, 321 Kan. 400, 418-21, 580 P.3d 1 (2025) (refusing to consider jail time credit issue raised for the first time in supplemental briefing); *State v. Gollahon*, No. 125,947, 2026 WL 252898, at *9 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* January 31, 2026. Though Baker contends that this court need not resolve any facts before deciding the issue, Baker also concedes that he was serving time for another Leavenworth County crime so perhaps some fact-finding is required. Moreover, the *Romey* court rejected the notion that an appellate court's refusal to consider a jail time credit issue impinged on fundamental rights when the case was remanded for further proceedings and the jail time issue could be properly litigated on remand. 321 Kan. at 422.

Although Baker has argued the applicability of an exception to the preservation rule, our appellate review remains prudential. *Mendez*, 319 Kan. at 730-31. Because this case is reversed and remanded to the district court on the probation revocation issue, we exercise our discretion to decline answering the jail time credit question, particularly on the facts before us, and dismiss Baker's claim related to jail time credit.

After this case was set on our court's summary calendar, the State filed a motion seeking to file supplemental briefing on the jail time credit issue to present arguments related to recent Legislative amendments to K.S.A. 21-6615 through HB 2444, which

will become law on July 1, 2026. We decline to permit premature briefing on a law which is not yet in existence.

Reversed in part, dismissed in part, and remanded.