No. 127,120

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KAITLYN NICOLE MCROBERTS,
a/k/a KAITLYN NICOLE CRAFT,
*Appellant.*

SYLLABUS BY THE COURT

1.

A district court, and not solely a probation officer, must impose an intermediate jail sanction before the district court revokes probation, unless the district court relies on an exception to the intermediate sanctions rule.

2.

When a court explicitly disavows reliance on any exception as its reason to revoke probation, we cannot conclude that the district court in fact exercised its authority to bypass sanctions by finding a new crime, or any other exception in K.S.A. 2021 Supp. 22-3716(c)(7). That the district court could have done so based on uncontested facts does not matter.

3.

A prior two- or three-day jail sanction imposed by a probation officer under K.S.A. 2021 Supp. 22-3716(b)(4)(A) cannot satisfy the requirement that such a jail sanction be "imposed pursuant to subsection (c)(1)(B)" before the district court can revoke a defendant's probation under K.S.A. 2021 Supp. 22-3716(c)(1)(C).

1

Appeal from Norton District Court; PRESTON A. PRATT, judge. Submitted without oral argument. Opinion filed March 28, 2025. Reversed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., GARDNER and HURST, JJ.

GARDNER, J.:  Kaitlyn Nicole McRoberts appeals the revocation of her probation and the imposition of her underlying prison sentence, arguing that the Norton County District Court abused its discretion by revoking her probation. After review, we reverse the revocation of McRoberts' probation and remand for further proceedings, finding that a district court, and not solely a probation officer, must impose an intermediate jail sanction before the district court revokes probation, unless the district court relies on an exception to the intermediate sanctions rule.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2021, the State charged McRoberts with unlawful distribution of methamphetamine and possession of drug paraphernalia. The State and McRoberts reached a diversion agreement, in which McRoberts stipulated to amended charges that added a count for possession of methamphetamine. In April 2022, the district court ordered McRoberts to an 18-month supervised diversionary period. But in late 2022, the State moved to revoke McRoberts' diversion based on an affidavit by McRoberts' diversion supervisor. It stated that McRoberts had not reported in person since the end of September 2022, she had missed four drug tests, and she had not completed her required "Moral Reconation Therapy."

2

In January 2023, McRoberts stipulated to those violations, and, in exchange, the State agreed not to recommend prison at sentencing. Still, McRoberts argued that revocation was not warranted. She asserted that she had missed her obligations because of her demanding job at the United States Postal Service. A letter from her employer confirmed that during this time, McRoberts was working six to seven days a week starting at 5:45 a.m. and ending as late as 8 p.m. According to McRoberts, she maintained contact with her diversion supervisor through email and other messages, explained her unique work situation to him, and did her best to reschedule any drug tests she missed due to work. Even so, the district court revoked her diversion and found her guilty of three crimes: One count of unlawful distribution of methamphetamine (a level 4 drug felony), one count of possession of drug paraphernalia (a level 5 drug felony), and one count of possession of methamphetamine (a level 5 drug felony).

Pending sentencing, the district court released McRoberts on bond. But only two days later, the district court issued a warrant for her arrest because she had violated the terms of her bond. The district court later sentenced McRoberts to 28 months' imprisonment, then suspended that sentence, and imposed 18 months' probation.

Two months later, in May 2023, McRoberts' probation officer imposed a two-day jail sanction for a positive drug test and missing an appointment. McRoberts then successfully completed an inpatient drug treatment program, but after she moved to an outpatient program, she was unsuccessfully discharged.

In September 2023, the State moved to revoke McRoberts' probation. Its motion alleged 31 different probation violations: Committing misdemeanor traffic offenses in May, July, and September 2023; failing to report her contact with law enforcement within 24 hours; failing to report as directed on four occasions; continuing to associate with persons possessing and using methamphetamine on five occasions; possessing and using methamphetamine on five occasions; submitting a drug test positive for

3

methamphetamine on six occasions; and failing to attend her drug treatment program on seven occasions.

At the hearing on the State's motion, McRoberts stipulated that she had violated the terms of her probation. She stated, however, that several violations had occurred because of other court hearings or medical appointments, and that she had used methamphetamine only once since having completed inpatient treatment. Yet the district court did not find these reasons sufficient to excuse her probation violations. It accepted her stipulation and found that she had violated her probation as alleged in the State's motion and its accompanying affidavit.

McRoberts argued that the district court should impose a 60-day sanction, but the State argued that a 60-day sanction was inappropriate and that the district court should revoke her probation.

The district court revoked McRoberts' probation, but it did not state which statute it relied on to do so:

> "So I do find that she has violated her probation as stated in the affidavit. And as she has agreed to.
> "So the question now becomes, what should be done because of that?
> "I do find that her probation should be revoked and she should serve her underlying sentence in prison. She does have a pattern of intentional conduct that demonstrates her refusal to comply with the treatment program.
> "She didn't—she did go to inpatient treatment. She did successfully complete that.
> "But she has had multiple uses of meth throughout her probation. And including use of meth even after she received a quick dip. And after she was discharged from inpatient treatment.
> "She's also had multiple failures to attend outpatient treatment. Which also includes after she had the quick dip and after she discharged from inpatient treatment.

4

"She's also had multiple failures to meet with [her probation supervisor]. Even after the quick dip and after being discharged from the inpatient treatment.

"She's also committed crimes while on probation. These were misdemeanors. But they are crimes. And she committed crimes while on probation.

"She's had ample opportunity to change her behavior. Both in the diversion agreement and while on probation. But she's failed to do so.

"And throughout this entire case she has a pattern of violating and then having lots of excuses why she violated. Which is what she's done again today.

"Where she's stipulated to the violations and then says, no I didn't really violate because I have excuses.

"Her pattern of contact—of conduct continues to be that she will do what she wants to do. Then after she's caught, she will have excuses why it was somebody else's fault that she did what she did.

"She's never taken personal responsibility for her behavior. And I think it is important that she have that personal responsibility.

"She was sentenced to 28 months in prison. She was put on probation, knowing the specific conditions of her probation. Knowing that if she violated her probation that it was very likely she would wind up in prison.

"She has violated, again even after receiving a quick dip. And after completing inpatient treatment, she's continued to violate.

"So I do find that the appropriate sanction is that she serve her underlying sentence in prison.

"So [McRoberts] will serve the 28 months in prison, less 22 of course, time for jail credit that she's already served."

On the journal entry of revocation, the district court did not check the box to say it was revoking McRoberts' probation under K.S.A. 22-3716(c)(7), which sets out exceptions to the intermediate sanctions rule—for example, the district court can revoke probation when it finds the probationer committed new crimes during probation. But in the comments section of the journal entry, the district court judge wrote:

"Defendant stipulated to violations as contained in the affidavit.

5

"Defendant has pattern of intentional conduct demonstrating refusal to comply with the treatment program: - multiple uses of meth including use after quick dip and in-patient treatment; - multiple failures to attend outpatient treatment including after quick dip and in-patient treatment; - multiple failures to report to ISO (which includes drug testing) including after quick dip and in-patient treatment.

"Defendant also committed new crimes while on probation in Norton County #2023-TR-147 (expired tag, unclassified misdemeanor & no insurance, class E misdemeanor).

"Although Defendant has committed new crime while on probation, Court is not revoking per [K.S.A.] 22-3716(c)(7) because Defen[dant] has had a quick dip."

The district court thus revoked McRoberts' probation and ordered her to serve her underlying 28-month term of imprisonment. McRoberts timely appeals.

## DID THE DISTRICT COURT ERR BY REVOKING MCROBERTS' PROBATION?

On appeal, McRoberts argues that the district court abused its discretion by revoking her probation because it lacked the legal authority to do so without having first imposed a prior sanction. See K.S.A. 2021 Supp. 22-3716(c)(1)(C). Although she admits she committed new crimes while on probation, she argues the district court did not rely on the new crimes exception or any other statutory exception to revoke her probation. She asserts that the district court based its decision to revoke her probation on its erroneous finding that it could do so because she had already received a "quick dip"—a jail sanction of two or three days.

In response, the State contends that McRoberts failed to preserve her argument for appeal. In the alternative, it argues the district court's verbal ruling showed that it legally revoked her probation by invoking exceptions to the general rule McRoberts relies on.

6

*Preservation*

We first address the State's argument that McRoberts did not preserve her claim of error. It asserts that McRoberts' argument to the district court for an intermediate sanction and continued probation is distinct from McRoberts' argument on appeal that the district court lacked authority to revoke her probation.

We decline to draw the line so finely. McRoberts asks us to do the same thing she asked of the district court—to permit her to continue on probation after imposing an intermediate jail sanction rather than revoking her probation. The district court denied this request, and McRoberts now appeals that denial. The issue was "raised and ruled on" before the district court, which properly preserves it for appeal. Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36); see *State v. Benjamin*, No. 123,214, 2021 WL 4352535, at *3 (Kan. App. 2021) (unpublished opinion) (finding claim that probation was improperly revoked was preserved when probationer's trial counsel requested sanctions at probation revocation hearing).

*Standard of Review*

District courts have the discretion to revoke an offender's probation and to order the offender to serve the original sentence unless limited by statute. *State v. Dooley*, 308 Kan. 641, 647, 423 P.3d 469 (2018); see K.S.A. 22-3716(b) and (c) (requiring intermediate sanctions before revocation in certain circumstances). We review a district court's revocation of probation and the imposition of an underlying sentence for abuse of discretion. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). A district court abuses its discretion only if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on factual error. The party asserting the error—in this case McRoberts—bears the burden to establish an abuse of discretion. 315 Kan. at 328.

7

When we are required to interpret a statute, our review is unlimited. *State v. Coleman*, 311 Kan. 332, 334-35, 460 P.3d 828 (2020).

*Exceptions—K.S.A. 22-3716(c)(7)*

We first consider the State's arguments that the evidence at the revocation hearing, as echoed in some of the court's pronouncements and comments, show that revocation was authorized under K.S.A. 2021 Supp. 22-3716(c)(7)(C) (new crimes) or under K.S.A. 2021 Supp. 22-3716(c)(7)(A) (probationer's welfare). If the State is correct, we need not reach McRoberts' argument, as the State asserts exceptions to the general rule that McRoberts relies on requiring a "quick dip." See generally K.S.A. 2021 Supp. 22-3716(c)(1)(C) and (c)(7).

K.S.A. 2021 Supp. 22-3716(c)(7)(C) states that a district court may revoke probation without having previously imposed an intermediate sanction if "the offender commits a new felony or misdemeanor while the offender is on probation." At her revocation hearing, McRoberts stipulated that she had committed new misdemeanors while on probation. Yet the district court judge did not cite the "new crime exception" in K.S.A. 22-3716(c)(7)(C) at the hearing. Still, when listing the reasons why he found revocation appropriate, the judge stated: "She's also committed crimes while on probation. These were misdemeanors. But they are crimes. And she committed crimes while on probation."

This type of statement at the revocation hearing is an implicit finding that other panels have recognized as sufficient to satisfy K.S.A. 22-3716(c)(7)(C). See, e.g., *State v. Kyles*, No. 112,430, 2015 WL 5613265, at *3-4 (Kan. App. 2015) (unpublished opinion); see also *State v. Wescoat*, No. 113,978, 2016 WL 3370225, at *2 (Kan. App. 2016) (unpublished opinion) (affirming revocation of Wescoat's probation without first imposing intermediate sanctions even though district court did not explicitly reference

8

new crime exception while revoking probation). Those cases reflect that when particularized findings are not required by statute, implicit findings are enough, unless a party asks for more definite findings. "If there is no objection, we presume the district court 'found all facts necessary to support its judgment.'" *Tafolla*, 315 Kan. at 332 (quoting *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 [2016]).

But we have something additional and different here—the court's journal entry stating: "Although Defendant has committed new crime while on probation, [the] Court is *not* revoking per [K.S.A.] 22-3716(c)(7) because [she] has had a quick dip." (Emphasis added.) A clearer statement of why the district court revoked McRoberts' probation could hardly be desired—the court did not revoke because of any exception in K.S.A. 22-3716 (c)(7) but revoked because McRoberts had already had a "quick dip," as K.S.A. 2021 Supp. 22-3716(c)(1)(C) generally requires.

Still, the State contends that this statement in the journal entry does not matter because the oral pronouncement of a sentence controls over the written journal entry. We agree that a sentence is effective when pronounced from the bench. *State v. Weekes*, 308 Kan. 1245, 1249, 427 P.3d 861 (2018). And "[t]he oral pronouncement of a sentence in the defendant's presence controls over the subsequent written journal entry if there is a conflict between the two." *State v. Arrocha*, 42 Kan. App. 2d 796, Syl. ¶ 2, 217 P.3d 467 (2009). Although the State argues that the journal entry here varies from the judge's ruling from the bench, it points out no conflict between the two. For example, it shows that the court found McRoberts had committed new crimes while on probation, yet it fails to point to any language showing that the court revoked McRoberts' probation for that reason, or for any other reason within an exception to the general rule requiring a prior intermediate sanction. And it fails to show any citation or reference in the court's oral pronouncement to any statute permitting revocation of probation.

Having reviewed both in detail, we find no conflict between the journal entry and the court's oral pronouncement. True, the journal entry is more specific in explaining the court's rationale and tying it to the governing statute, but nothing in the journal entry contradicts or confuses anything the court said in its oral pronouncement. The court's oral pronouncement recited the facts at length, including that McRoberts had committed crimes while on probation and had not complied with her treatment program, and it repeatedly referred to McRoberts' prior "quick dip." But it cited no statutory authority for revoking probation. Instead, the court's oral pronouncement left hearers to speculate about what the court's authority was for revoking probation, or why it decided to revoke probation.

On the journal entry, the court did not check the box for any K.S.A. 22-3716(c)(7) exception or otherwise find that an exception applied. Like the court's oral pronouncement, the journal entry included comments about McRoberts' refusal to comply with her treatment program and her commission of new crimes, and as did its oral pronouncement, it repeatedly referred to her "quick dip." It added, however, that it was not revoking based on K.S.A. 22-3716(c)(7) but was revoking because McRoberts had had a "quick dip." That is the sole reference in either the court's oral pronouncement or its journal entry to any statutory authority or reason for revoking McRoberts' probation.

Contrary to the State's view, we find the oral pronouncement and the journal entry consistent. The journal entry clarifies the court's oral statements at the probation revocation hearing and expressly states what authority the court relied on in revoking probation ("quick dip") and what authority the court did not rely on in so doing (a K.S.A. 22-3716[c][7] exception). Because the district court's journal entry contains the factors it relied on in deciding to revoke—which align with its oral pronouncements—we will consider both in our review. See *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 402, 77 P.3d 130 (2003).

10

In light of the court's explicit disavowal of its reliance on any K.S.A. 22-3716(c)(7) exception as its reason to revoke probation, we cannot conclude that the district court in fact exercised its authority to bypass sanctions by finding a new crime, or any other exception in K.S.A. 22-3716(c)(7). That the district court could have done so based on uncontested facts does not matter. "[H]armless error cannot save the probation revocation. The district court judge must apply the proper legal standard." *State v. Wilson*, 314 Kan. 517, 525, 501 P.3d 885 (2022); see *State v. Wilkinson*, No. 126,645, 2024 WL 3634299, at *4 (Kan. App. 2024) (unpublished opinion); *State v. Roubideaux-Davis*, No. 125,764, 2023 WL 5662765, at *9 (Kan. App. 2023) (unpublished opinion). We thus do not analyze the merits of the State's arguments that the evidence at the revocation hearing, echoed in some of the court's oral pronouncements and comments, shows that the district court revoked under K.S.A. 22-3716(c)(7)(C) (new crimes) or under K.S.A. 22-3716(c)(7)(A) (probationer's welfare).

*Revocation of McRoberts' Probation*

We instead move to McRoberts' argument that the district court abused its discretion by revoking her probation because it lacked legal authority to do so. See K.S.A. 2021 Supp. 22-3716(c). She admits that she had a prior two-day jail sanction imposed by her supervising officer but argues that under K.S.A. 2021 Supp. 22-3716(c)(1)(C), a district court, rather than a probation officer, must impose that sanction to satisfy the statutory framework; because the district court violated the prior sanctions requirement, its revocation of her probation was based on an error of law and was thus an abuse of discretion. The State does not address this argument, having put all its eggs in the "exceptions" basket we reject above.

*Compliance with the Prior Sanction Requirement—K.S.A. 22-3716(c)(1)*

Analysis of McRoberts' argument requires us to interpret several statutes. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be determined. An appellate court must first attempt to find out legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). When there is no ambiguity, the court need not resort to statutory construction. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022). A district court must apply the prior sanctions statute in effect at the time of the probationer's original crime of conviction. *State v. Dominguez*, 58 Kan. App. 2d 630, 637, 473 P.3d 932 (2020). McRoberts' offense was committed in December 2021, so K.S.A. 2021 Supp. 22-3716(c) is the controlling sanctions statute.

K.S.A. 2021 Supp. 22-3716(c)(1)(C) establishes the sanctions a district court may impose. That statute states the general rule that a district court may revoke an offender's probation if the violator already had a sanction imposed under subsection (c)(1)(B) related to the crime for which the original supervision was imposed:

> "(c)(1) Except as otherwise provided, if the original crime of conviction was a felony, other than a felony specified in K.S.A. 21-6804(i), and amendments thereto, and a violation is established, *the court may impose the following sanctions*:
>
> (A) Continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction; [or]
>
> (B) continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and *an intermediate sanction of confinement in a county jail to be*

12

*imposed as a two-day or three-day consecutive period*. The total of all such sanctions imposed pursuant to this subparagraph and subsection (b)(4) shall not exceed 18 total days during the term of supervision, except as provided in subsection (h); or

(C) *if the violator already had a sanction imposed pursuant to subsection (c)(1)(B) related to the crime for which the original supervision was imposed, revocation of the probation*, assignment to a community corrections services program, suspension of sentence or nonprison sanction and requiring such violator to serve the sentence imposed, or any lesser sentence and, if imposition of sentence was suspended, imposition of any sentence that might originally have been imposed." (Emphases added.) K.S.A. 2021 Supp. 22-3716(c)(1).

K.S.A. 2021 Supp. 22-3716(b)(4)(A) outlines the sanctions a probation officer may impose, including a two- or three-day intermediate jail sanction:

"(4) Except as otherwise provided, if the defendant waives the right to a hearing, the following sanctions may be imposed without further order of the court:

(A) If the defendant was on probation at the time of the violation, the defendant's supervising court services officer, with the concurrence of the chief court services officer, may impose an intermediate sanction of confinement in a county jail, to be imposed as a two-day or three-day consecutive period. The total of all such sanctions imposed pursuant to this subparagraph and subsections (b)(4)(B) and (c)(1)(B) shall not exceed 18 total days during the term of supervision, except as provided in subsection (h)." K.S.A. 2021 Supp. 22-3716(b)(4)(A).

Here, the district court had not imposed a two- or three-day jail sanction before it revoked McRoberts' probation. Rather, a probation officer had imposed McRoberts' prior two-day jail sanction under K.S.A. 2021 Supp. 22-3716(b)(4)(A). McRoberts argues that only a jail sanction imposed by the district court—not one imposed by a probation officer—permits the district court to revoke probation because the sanction under K.S.A. 2021 Supp. 22-3716(c)(1)(B) does not include the two- or three-day jail sanctions a supervising officer can impose under K.S.A. 2021 Supp. 22-3716(b)(4)(A).

13

Based on the plain language of the statute above, we agree. A sanction imposed under subparagraph (c)(1)(B) (by the court) is distinct from a sanction imposed under subsection (b)(4) (by the probation officer). K.S.A. 2021 Supp. 22-3716(c)(1)(C) permits a court to revoke if "the violator already had a sanction imposed pursuant to subsection (c)(1)(B)." And (c)(1)(B) speaks only to sanctions that "the court may impose." The Legislature in (c)(1)(B) distinguishes between sanctions imposed under that subparagraph and those imposed under (b)(4):

"[T]he court may impose the following sanctions:

. . . .

"(B) . . . an intermediate sanction of confinement in a county jail to be imposed as a two-day or three-day consecutive period. *The total of all such sanctions imposed pursuant to this subparagraph and subsection (b)(4)* shall not exceed 18 total days during the term of supervision, except as provided in subsection (h)." (Emphasis added.)

Sanctions imposed under subsection (b)(4) are imposed by probation officers, not by the court.

Similarly, subsection (b)(4) makes the same distinction between sanctions imposed by probation officers and those imposed by the court, as does (c)(1)(B):

"(A) If the defendant was on probation at the time of the violation, the defendant's supervising court services officer, with the concurrence of the chief court services officer, may impose an intermediate sanction of confinement in a county jail, to be imposed as a two-day or three-day consecutive period. *The total of all such sanctions imposed pursuant to this subparagraph and subsections (b)(4)(B)* and (c)(1)(B) shall not exceed 18 total days during the term of supervision, except as provided in subsection (h)." (Emphasis added.) K.S.A. 2021 Supp. 22-3716(b)(4)(A).

We must not read something into the statute that is not readily found in its words. *Keys*, 315 Kan. at 698. Under the applicable statute, only a two- or three-day jail sanction

14

imposed by a court gives the district court authority to revoke probation under K.S.A. 2021 Supp. 22-3716(c)(1)(C).

In contrast, the prior version of the statute specifically stated that a two- or three-day sanction imposed by the district court or by a probation officer permitted movement to the next rung on the intermediate sanctions ladder. Its initial structure of the intermediate sanctions was the same as that which applies to McRoberts. See K.S.A. 2021 Supp. 22-3716(b)(4)(A), (c)(1)(B). Under K.S.A. 2018 Supp. 22-3716(b)(4)(A), a supervising court services officer could impose a two- or three-day jail sanction without the court's permission if a probationer waived the right to a hearing after violating probation. The district court could also impose a two- or three-day jail sanction. K.S.A. 2018 Supp. 22-3716(c)(1)(B).

But the prior statute required an additional sanction before the district court could revoke a defendant's probation. Before the 2019 amendments, if a defendant on probation for a felony violated probation and had already received a two- or three-day jail sanction, no matter who had imposed it, then the district court could impose a sanction of 120 or 180 days in prison. K.S.A. 2018 Supp. 22-3716(c)(1)(C)-(D). And only after an additional violation could the court revoke probation, absent an exception. K.S.A. 2018 Supp. 22-3716(c)(1)(E).

So, before the court could revoke probation, it had to impose a jail sanction and then a prison sanction. But the initial "quick dip"—a two- or three-day jail sanction— could be imposed by a probation officer under K.S.A. 2018 Supp. 22-3716(b)(4)(A). Any would satisfy the first rung of the intermediate sanction ladder. The statute authorizing a prison sanction of 120 days, K.S.A. 2018 Supp. 22-3716(c)(1)(C), required a prior jail sanction by the court, (c)(1), or by a probation officer, (b)(4):

15

"[I]f the violator already had at least one intermediate sanction imposed pursuant to subsection (b)(4)(A), (b)(4)(B) or (c)(1)(B) related to the crime for which the original supervision was imposed, continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and remanding the defendant to the custody of the secretary of corrections for a period of 120 days."

And the statute authorizing a prison sanction of 180 days, K.S.A. 2018 Supp. 22-3716(c)(1)(D), did the same:

"[I]f the violator already had a sanction imposed pursuant to subsection (b)(4)(A), (b)(4)(B), (c)(1)(B) or (c)(1)(C) related to the crime for which the original supervision was imposed, continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and remanding the defendant to the custody of the secretary of corrections for a period of 180 days."

The language of these subsections explicitly stated by reference to statutory subsections that these 120- and 180-day prison sanctions could be imposed after a two- or three-day jail sanction imposed by either the probationer's supervising officer *or* the district court. See *State v. Williams*, No. 123,256, 2021 WL 2493210, at *1 (Kan. App. 2021) (unpublished opinion) (explaining "[1] either the district court, [probationer's] court services officer, or [probationer's] community corrections officer had to impose a two-day or a three-day jail sanction; and then [2] the district court had to impose either a 120-day or a 180-day prison sanction" before district court could revoke probation).

But in 2019, the Legislature amended the intermediate sanctions statute by eliminating the 120- and 180-day imprisonment rungs (the "dunk") on the intermediate sanctions ladder and made revocation the next step after the jail sanction (the "quick dip"). Thus, under the version of the statute applicable to McRoberts, the district court

16

may revoke an offender's probation after the probationer has received at least one two- or three-day jail sanction. K.S.A. 2021 Supp. 22-3716(c)(1)(C) (with some exceptions).

Unlike the prior version of the statute, the applicable statute makes no reference to the two- and three-day jail sanction that a probationer officer can impose under K.S.A. 2021 Supp. 22-3716(b)(4)(A). Instead, the revocation subsection refers solely to a prior sanction imposed under subsection (c)(1)(B), which outlines the sanctions a district court may impose:

> "[I]f the violator already had a sanction imposed pursuant to subsection (c)(1)(B) related to the crime for which the original supervision was imposed, [the court may impose] revocation of the probation . . . and requir[e] such violator to serve the sentence imposed, or any lesser sentence and, if imposition of sentence was suspended, imposition of any sentence that might originally have been imposed." K.S.A. 2021 Supp. 22-3716(c)(1)(C).

The plain language of the statute applicable to McRoberts makes no reference to the sanction imposed by a probation officer under K.S.A. 2021 Supp. 22-3716(b)(4)(A), although the prior version did. See K.S.A. 2018 Supp. 22-3716(c)(1)(C)-(D). When the Legislature revises an existing law, we presume that the Legislature intended to change the law as it existed before the amendment. *City of Dodge City v. Webb*, 305 Kan. 351, 356, 381 P.3d 464 (2016). Perhaps the Legislature intended to require only that the probationer receive a prior two- and three-day jail sanction, no matter who imposed it, before a court can revoke probation under K.S.A. 22-3716(c)(1)(C). But we do not reach intent when the plain language of a statute resolves the issue, as it does here.

Accordingly, we hold that a prior two- or three-day jail sanction imposed by a probation officer under K.S.A. 2021 Supp. 22-3716(b)(4)(A) cannot satisfy the requirement that such a jail sanction be "imposed pursuant to subsection (c)(1)(B)" before the district court can revoke probation under K.S.A. 2021 Supp. 22-3716(c)(1)(C).

17

The district court did not comply with this statutory requirement when revoking McRoberts' probation because her only prior jail sanction had been imposed by her probation officer under K.S.A. 2021 Supp. 22-3716(b)(4)(A), and not by the district court under K.S.A. 2021 Supp. 22-3716(c)(1)(B). Thus, revocation based on McRoberts' prior two-day jail sanction was based on an error of law, which is an abuse of discretion. We reverse and remand to the district court with instructions for the district court to impose an intermediate jail sanction or make appropriate findings for an exception to such intermediate sanction before revoking probation.

We recognize that the State asks us to instead remand for the entry of a nunc pro tunc order. See *State v. Turner*, 317 Kan. 111, Syl., 525 P.3d 326 (2023) ("A journal entry of judgment may be corrected at any time by a nunc pro tunc order, which is appropriate for correcting arithmetic or clerical errors arising from oversight or omission."). But the State fails to show any arithmetic or clerical errors or that any errors arose from oversight or omission. And "[i]f there is no arithmetic or clerical error arising from oversight or omission, a nunc pro tunc order is not appropriate." 317 Kan. 111, Syl.; see K.S.A. 22-3504(b) (permitting nunc pro tunc order to correct clerical errors). The district court did not make an arithmetic or clerical error on the journal entry by stating that it was revoking because McRoberts had had a "quick dip." Rather, it based that ruling on an error of law and failed to apply the proper legal standard when revoking McRoberts' probation. This is an error of law not properly corrected by a nunc pro tunc order.

Reversed and remanded with directions.

18