NOT DESIGNATED FOR PUBLICATION

No. 128,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADY MICHAEL GUGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Submitted without oral argument. Opinion filed April 10, 2026. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: Brady Michael Guge pled guilty to one count of attempted kidnapping and received a dispositional departure to 36 months of probation, with a suspended prison sentence of 120 months. While serving probation he tested positive for THC, missed required community corrections meetings, and refused to take urinalysis (UA) tests. In response, his intensive supervision officer (ISO) imposed a "quick dip" in jail to attempt to resolve these issues. When this did not end Guge's continuing violations, the ISO filed an affidavit of noncompliance with probation and the district court revoked probation and imposed his prison sentence. Guge now appeals the revocation of

1

probation, arguing the district court erred by including the violations for which he previously served his quick-dip sanction when deciding to revoke his probation. On review, we find no abuse of discretion and affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Because we consider only the facts related to violation of his probation, the underlying details of Guge's crime are irrelevant to our analysis. Essentially, Guge was arrested after a nurse reported an attempted kidnapping as she walked to her car after work at a local hospital. Guge was charged with one count of attempted kidnapping for that attack. In December 2023, Guge entered into a plea agreement with the State recommending a mid-box score with a dispositional departure to probation.

At the plea hearing in February 2024, the judge considered Guge's criminal history, consisting of 17 different convictions, as well as his behavior while in custody awaiting sentencing. Guge was in custody for 607 days while this case was pending and granted house arrest 50 days prior to sentencing. While on house arrest, Guge held a job, attended Narcotics Anonymous and Alcoholics Anonymous, and was regularly taking UAs as required. However, there were some incidents while on house arrest, including being bumped up from electronic monitoring to full house arrest due to an incident at a hospital, and he sent social media images of a jail nurse to an inmate presently incarcerated, which drew concern due to the similarities shared with his present crime of conviction.

At sentencing, the district court specifically told Guge the consequences of a probation violation, including that there were no graduated sanctions that must be followed in his case if he were to violate. Guge was then granted a downward dispositional departure to probation for 36 months, with an underlying prison sentence of 120 months with credit for time served. His probation order required, among the standard

requirements, that he: "Obtain S/A [substance abuse and] M/H [mental health] evaluations and successfully complete all recommended treatments, remain [a] resident at [a] sober living facility for 12 months." By signing the order, Guge agreed to abide by all conditions of probation.

Four months later, Guge was internally sanctioned and received a three-day quick dip in jail from June 14 to June 17, 2024, for various violations. In August 2024, Guge's ISO filed an affidavit of noncompliance with probation alleging that Guge failed to report to community corrections, was removed from Elevated Ministries, failed to provide a valid residential address, failed to address court obligations, tested positive for THC on UAs, refused the recommended sex offender treatment directed in his domestic violence assessment, and was removed from the Problem Solving Beds program. Of the violations alleged in this affidavit, two of the four positive THC results occurred before the quick dip, one of the three refused UAs occurred before the quick dip, and two of the five failures to report occurred before the quick dip.

At the probation violation hearing, the ISO testified to the various violations and reported that Guge often made excuses why he could not comply. When asked why Guge was removed from Problem Solving Beds housing, the ISO clarified that it was not necessarily for non-compliance, but rather that Guge called a staff member a "fucking bitch" and was removed for disrespect. The ISO testified that Guge was ordered to live in sober living but "had a history of being kicked out." As for removal from other sober living facilities, Guge claimed that he was bullied and so he went to live with his brother, but the ISO was never able to verify this.

Guge admitted to the following violations: he failed to report to community corrections on May 14 and 17, June 25, August 7, and August 15 of 2024; he was kicked out of Elevated Ministries; he used marijuana and tested positive for THC; he did not

3

complete sex offender treatment; and he did not make any payments toward his court costs and fees.

His reasons for the violations included: not having a ride to community corrections and not being able to reschedule, smoking marijuana to cope with life events including sickness and death in the family, maintaining that he was not a sex offender so he does not need sex offender treatment, and that he had other sober living facility beds lined up prior to his probation being revoked.

The ISO testified that, ultimately, Guge was "not amenable to probation. He never has been. He really started violating his probation immediately upon arrival. He's had several run-ins with the police, seven of them since being sentenced. . . . He takes probation as a suggestion."

Based on the testimony and evidence presented, the district court found that Guge's attitude and excuses demonstrated that probation was not working. Guge received "an assessment that says [he] need[s] to have further evaluation for . . . sex offender issues, and [he] decide[s] that's not really for [him]. That [he does not] think [he's] a sex offender." He was removed from several sober living facilities and was not living in one at the time of the hearing as mandated by his probation.

The district judge ultimately stated to Guge:

> "You had your opportunity. You got a great deal in your plea bargain, in your plea agreement. I'm not modifying your sentence. You're remanded to the custody of the sheriff for transportation to the Department of Corrections to serve the balance of your sentence. Probation is revoked."

Guge timely appeals.

4

THE DISTRICT COURT DID NOT ERR IN REVOKING PROBATION

Guge argues that because his ISO had already imposed punishments for various probation violations, it was error for the district court to consider those same violations when deciding whether to revoke probation. In response, the State first contends that Guge has failed to preserve his claim that the use of previously sanctioned violations in the probation revocation hearing was erroneous because he did not specifically object to it during the revocation hearing. Even so, on the merits of his claim, the State maintains that the district court can consider all relevant information when determining the proper sanction.

*Preservation*

The State argues that Guge raises this issue for the first time on appeal because he did not specifically object to the use of previously sanctioned violations at the violation hearing; he only asked the district court to give him another chance at probation. Guge reasons that the issues are properly preserved for appeal because he asked the court to continue his probation, which encompasses his current argument.

This court has previously rejected the argument that asking the district court for an intermediate sanction and continued probation is distinct from the argument on appeal that the district court lacked authority to revoke probation. *State v. McRoberts*, 65 Kan. App. 2d 481, 485-86, 567 P.3d 905 (2025) ("We decline to draw the line so finely. McRoberts asks us to do the same thing she asked of the district court—to permit her to continue on probation . . . rather than revoking her probation. The district court denied this request, and McRoberts now appeals that denial."), *rev. denied* 320 Kan. 866 (2025). Instead, we found that asking for the same thing on appeal—to permit a defendant to continue on probation rather than revocation—after it has been denied below is an issue

5

that was "raised and ruled on" such that it is properly preserved for appeal. 65 Kan. App. 2d at 486. See Kansas Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36).

Because we find that Guge's argument to continue on probation was sufficiently preserved, we need not thoroughly address his alternative arguments that there are exceptions—due process and jurisdictional legal arguments—that permit us to review his claims for the first time on appeal.

*Standard of Review*

The initial decision to impose probation can be an act of grace in situations such as Guge's, where he faced presumptive imprisonment—but once a defendant receives the privilege of probation, that defendant has a conditional liberty interest in remaining on probation. That interest is subject to substantive and procedural due process. This means that once probation is imposed, it may only be revoked if a determination is made that the defendant failed to comply with conditions of probation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). The decision to revoke probation involves two steps: (1) a factual determination that the probationer violated a condition of probation; and (2) a discretionary determination of the appropriate disposition in light of the proved violations. Revocation is merely one of the available dispositions. *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018).

Guge does not dispute that he violated his probation on numerous occasions. He admitted violations before the district court, and he does not contest on appeal that he violated conditions of his probation. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) ("Issues not briefed are deemed waived or abandoned."). Therefore, the first step in the revocation process is uncontested.

6

Once a probation violation is established, a district court has discretion to revoke probation and impose the original sentence unless the court is otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). See K.S.A. 22-3716 (requiring graduated sanctions before revocation in certain circumstances). We review the district court's decision for an abuse of discretion. Generally, a district court abuses its discretion by issuing an order that is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

There are exceptions to the intermediate sanctioning scheme. In the current version of the statute, a court may revoke probation without having previously imposed a sanction in certain situations. Applicable here, one of those situations is if the offender receives probation as the result of a dispositional departure. K.S.A. 22-3716(c)(7)(B). The dispositional departure statutory exception does not require particularized findings. *Tafolla*, 315 Kan. at 331. Additionally, when the district court relied on one valid ground to revoke probation, it does not matter if another ground was invalid. *State v. Grossman*, 45 Kan. App. 2d 420, 428, 248 P.3d 776 (2011).

Thus, the district court was not required to impose any intermediate sanctions before revoking Guge's probation. Instead, Guge solely argues that the district court abused its discretion based on an error of law—because it did not have the legal authority to use previously sanctioned conduct in its decision to revoke Brady's probation. Whether or not Guge also claims the district court's decision was unreasonable under the circumstances is unclear, but in the interest of completeness, we examine both claims.

7

*The district court's decision was reasonable.*

We first address the reasonableness of the district court's decision to revoke Guge's probation. Probation from service of a sentence is "'an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right.'" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Here, Guge's charge for attempted kidnapping called for a presumptive prison sentence of 10 years, but the district court extended Guge the opportunity to serve 36 months of probation due to a comparatively successful experience on house arrest prior to sentencing and almost 2 years served while awaiting sentencing.

Based on his testimony at sentencing, it appeared that Guge had made genuine steps in improving his behavior. Guge testified that he spent the two years in custody pending resolution of this charge to change his life, approach situations differently, and build meaningful relationships with his family and himself. While out on bond, he got a job, rebuilt his relationship with his mother, and stayed in the Oxford House sobriety facility where he found that others taught him to be more mature. Guge also testified that he was building a relationship with his stepson while out on bond and working on his mental health.

At the revocation hearing, Guge testified that he and his spouse were expecting a child. Although the district court was then faced with the difficult decision whether to send an expectant father to prison for violations, Guge's choice to violate the conditions of his probation at that time further demonstrates his disregard for the opportunity he had been given.

The first quick dip sanction should have been a wake-up call that Guge could and would be going to prison for 10 years if he did not follow the conditions of probation. In fact, the district court had quite clearly put Guge on notice at sentencing that it would not

tolerate violations. Instead, Guge continued ignoring the rules and coincidentally conceived a child around the height of his disregard for the chance he had been given. Despite the long list of positive life circumstances and privileges demonstrated at sentencing, Guge did not continue in his ability to comply with the rules.

Given the district court's clear message to Guge at sentencing, and his disregard for the conditions of probation soon thereafter, we cannot say that no reasonable person would agree with the district court's decision, and we find no abuse of discretion on that point.

*Any one of Guge's violations would have been sufficient to support revocation.*

In addition to being reasonable, we consider the legality of the district court's decision. First, we reiterate that because the dispositional departure statutory exception authorizes the district court to revoke an offender's probation without having previously imposed intermediate sanctions, any one of Guge's violations would have been sufficient for the district court to revoke his probation.

Guge argues that because some of his violations were already sanctioned by the probation office, we cannot be sure that the remainder of his violations would have been sufficient to reasonably justify revocation. The State counters that all relevant information is admissible "[b]ecause violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, [thus] it is extremely important that all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings." *State v. Turner*, 257 Kan. 19, 24-25, 891 P.2d 317 (1995) (citing *United States v. Winsett*, 518 F.2d 51, 54-55 (9th Cir. 1975).

A common sense understanding of revocation hearings leads to the conclusion that the consideration of all previous actions while on probation may be considered at the disposition stage. Generally, when a defendant receives probation, he or she receives intermediate sanctions for violations. But when repeated violations occur, the court becomes aware through that pattern that probation may no longer be a viable option. True, a later violation may be a comparatively minor or technical violation when considering the prior violations. However, it is the full picture of behavior that demonstrates a defendant's lack of amenability to probation. See, e.g., *State v. Muench*, No. 121,123, 2019 WL 6634278 (Kan. App. 2019) (unpublished opinion) (probation revoked on the seventh violation). That was true here, where the consideration of previously sanctioned violations demonstrated to the district court that Guge did not receive the expected wake-up call after a quick dip in jail and continued to violate the conditions of his probation, and that he was unlikely to be successful. Our Supreme Court has supported this holistic view of an offender's conduction, finding that, although post-probationary conduct cannot be considered during the violation phase, if "a violation of . . . conditions of probation is established, however, we see no reason why [all] offending conduct cannot then be considered by the court during the disposition stage as part of the district court's discretion." *State v. Skolaut*, 286 Kan. 219, 234, 182 P.3d 1231, 1240 (2008).

Strengthening the court's decision is that even without considering the violations occurring before the sanction, the district court still had multiple violations to consider: three failures to report on June 25, August 7, and August 15, 2024; removal from Elevated Ministries on August 13, 2024; failure to provide a valid residential address following removal from the sobriety home; failure to address court obligations; two positive THC results on July 13 and July 30, 2024; failure to provide UAs on July 18, July 26, and August 2, 2024; failure to enter or complete a Sex Offender Treatment Program; and removal from Problem Solving Beds on July 16, 2024 due to noncompliance.

As a result, the district court had reasonable independent grounds for revoking probation, even though it appropriately considered the violations that had been internally sanctioned by the probation office. And in light of the proved violations, the district court's decision to revoke probation was legally appropriate.

Affirmed.